(Nos. 28474, 28490.—

THE PEOPLE for the use of Francis B. Murphy, Director of Labor, Appellee, *vs.* CHICAGO WASTE & TEXTILE COMPANY *et al.*—(CARTER H. HARRISON, Collector of INTERNAL REVENUE, Appellant.)—THE PEOPLE for the use of Francis B. Murphy, Director of Labor, Appellee, *vs.* ADVERTISING REVIEW PUBLISHING COMPANY *et al.* —(UNITED STATES OF AMERICA, Appellant.)

*Opinion filed May 23, 1945—Rehearing denied September 17, 1945.*

J. ALBERT WOLL, United States Attorney, of Chicago, SAMUEL O. CLARK, JR., SEWELL KEY, A. F. PRESCOTT, PAUL R. RUSSELL, and C. STANLEY TITUS, all of Washington, D. C., and JOHN B. STEPHAN, of Chicago, for appellants.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of Chicago, of counsel,) for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

These cases have been consolidated for opinion in this court. The issues involved are such that each case must be considered separately in this opinion. We will first consider cause No. 28474. That case is an appeal by Carter H. Harrison, Collector of Internal Revenue, from an order of the circuit court of Cook county, denying his claim for priority of payment. The claim for which priority of payment is sought is the amount of Federal insurance contribution taxes and Federal unemployment taxes due the Federal government from an insolvent employer. Appellee's claim as Director of Labor of the State of Illinois, against the same fund, is for unemployment compensation contributions, plus penalties, interests and costs due the State of Illinois. The amounts due both appellant and appellee accrued against Chicago Waste & Textile Company. A judgment was entered against that company in favor of one of its creditors in the municipal court of Chicago. An execution was issued and placed in the hands

of the bailiff of the municipal court, whereupon appellee, as Director of Labor of the State of Illinois, on June 29, 1942, filed this suit in the circuit court of Cook county.

The purpose of the suit was to foreclose the tax lien for the unpaid unemployment compensation contributions due the State, for appointment of a receiver and for an injunction restraining the sale of the property under the execution. Upon the filing of the complaint, a receiver was appointed, as prayed. Thereafter, the property was liquidated by the receiver. The net amount arising from the liquidation of the property was $677.81, which the court ordered deposited with the clerk of the circuit court, subject to the further order of the court. The claim of appellant and the claim of appellee were each in an amount in excess of the amount of the funds on deposit.

On November 16, 1942, appellant filed his intervening petition. In this intervening petition, after reciting the filing of the claim in the cause on October 9, 1942, he alleged that by virtue of section 3466 of the Revised Statutes of the United States, his claim was entitled to priority of payment to the extent of the funds on deposit with the clerk. To this intervening petition, appellee filed his answer in which he denied that the claim of appellant was entitled to priority of payment. He alleged that there was due the State of Illinois from the insolvent employer for unemployment compensation contributions, the sum of $738.49, plus penalties; that said contributions were a lien on the property of the insolvent employer; that notice of the lien had been filed in the office of the recorder, as required by statute; that the lien for contributions due the State of Illinois was entitled to priority of payment over the claim of appellant and all other creditors.

Upon a hearing it was adjudged that appellee was entitled to priority to the extent of 90 per cent of the funds on deposit with the clerk, and that appellant was entitled to priority as to the remaining 10 per cent of such funds.

To review that order, appellant, as Collector of Internal Revenue, perfected an appeal to the Appellate Court for the First District. On motion of appellee, the cause was transferred to this court on jurisdictional grounds.

Appellant's claim is, in part, for taxes due under section 1600 of the Federal Unemployment Tax Act, and, in part, for Federal insurance contributions under section 801 of title VIII of the Social Security Act. We will consider first that part of the claim arising under the Federal Unemployment Tax Act.

Appellant claims the right of priority of payment of the taxes due the Federal government under section 1600 of the Federal Unemployment Tax Act (26 U.S.C. 1600; formerly title IX of the Social Security Act,) under section 3466 of the Revised Statutes of the United States (31 U.S.C. 191,) which provides that whenever any person indebted to the United States is insolvent, or his estate is insufficient to pay all his debts, the debts due to the United States shall be first satisfied.

Appellee claims that taxes due the Federal government under the Federal Unemployment Tax Act are not such debts as are comprehended within the provisions of said section 3466 of the Revised Statutes. Appellee further contends that even though the taxes due the Federal government in this case are debts due the United States within the purview of said section 3466, the State of Illinois has a prior lien on the assets of the taxpayer for the amount due the State under section 26(a) of the Unemployment Compensation Act of Illinois. Ill. Rev. Stat. 1943, chap. 48, par. 243.

In the view we take, it will not be necessary to decide either of the above questions in connection with appellant's claim for priority as to the taxes due under the Federal Unemployment Tax Act. Section 1600 of the Federal Unemployment Tax Act (26 U.S.C. 1600) imposes an excise tax equal to 3 per cent of the total wages paid during

each calendar year upon all employers having eight or more employees. Section 1601(a) (26 U.S.C. 1601(a)) of said act provides that the taxpayer may credit against the taxes imposed by section 1600, the amount of contributions paid by him into an unemployment fund maintained during the taxable year under the unemployment compensation law of a State, which is certified for the taxable year as provided in section 1603. The Illinois Unemployment Compensation Act was approved and certified by the Federal Social Security Board as provided in said section 1603. Section 1601(c) provides that the total amount of credits allowed "shall not exceed 90 per centum of the tax against which such credits are allowed." Section 1601(a)(3) provides that such credit shall be permitted only for contributions paid on or before the last day upon which the taxpayer is required by section 1604 to file a return for such year "except that credit shall be permitted for contributions paid after such last day, but before July 1 next following such last day, but such credit shall not exceed 90 per centum of the amount which would have been allowable as credit on account of such contributions had they been paid on or before such last date." Section 1604 (26 U.S.C. 1604) fixes January 31, as the last day on which returns for the preceding calendar year shall be filed.

The claim of appellant is for taxes due the Federal government accruing in the years 1941 and 1942. The last due date of the return for the year 1941, under section 1604, was January 31, 1942. The last due date of the return for the year 1942 was January 31, 1943.

Section 602(b) of the Revenue Act of 1943 (26 U. S.C. 602(b),) provides: "Against the tax imposed by the Federal Unemployment Tax Act for the calendar year 1939, 1940, 1941, or 1942, any taxpayer shall be allowed credit for the amount of contributions paid by him into an unemployment fund under a State law, without regard to the date of payment, if the assets of the taxpayer were,

at any time during the period from the last day upon which the taxpayer was required under section 1604 of the Federal Unemployment Tax Act to file a return of the tax against which credit is claimed to June 30 next following such last day, inclusive  *  *  *  in the custody or control of a receiver, trustee, or other fiduciary appointed by, or under the control of, a court of competent jurisdiction  *  *  *."

The record in this case shows that the receiver was appointed on June 29, 1942. The receiver qualified on June 30, 1942. This was prior to the expiration of the last day on which the taxpayer was entitled to a credit on the Federal taxes for the year 1941, for payments made to the State. The assets were, therefore, in the custody and under the control of a receiver during the period from the last day upon which the taxpayer was required to file a return of the tax against which credit is claimed and June 30 next following such last day, inclusive. Such assets were also in the hands of the receiver during all the time subsequent to that period. Under section 602(b) of the Revenue Act of 1943, all limitations as to the time of payment, when the assets were in the hands of a receiver, were removed. The receiver was, therefore, at any time after his appointment, entitled to pay contributions for the years 1941 and 1942 to the State and was entitled to credit on the taxes due the Federal government for the amounts paid to the State, up to 90 per cent of the taxes due the Federal government, for both years.

This brings us to a consideration of cause No. 28490. This case presents the questions on a different factual record from that presented by the record in cause No. 28474. This case is an appeal by the United States from a decree entered by the circuit court of Cook county. The appeal was also taken to the Appellate Court for the First District. On motion of appellee, the cause was transferred to this court on jurisdictional grounds.

The record shows that on January 9, 1939, Advertising Review Publishing Company made a general assignment of its assets and property to William Fisher, trustee, for the benefit of its creditors; that he had reduced the assets to cash and had remaining in his hands the net amount of $1253.11; that Carter H. Harrison, Collector of Internal Revenue, had filed claims with the trustee for capital stock tax and claims for taxes accruing under the Federal Unemployment Tax Act, aggregating more than the total amount of funds in the hands of the trustee. The Director of the Department of Labor of the State of Illinois also filed claims with the trustee for unemployment compensation contributions due the State of Illinois in the amount of $721.29, plus interest.

On February 11, 1942, Fisher, the trustee, filed his complaint in this cause in the nature of an interpleader, asking for instructions of the court as to the distribution of the funds in his hands. The Collector of Internal Revenue and the Director of the Department of Labor of the State of Illinois were both made parties defendant. On April 2, 1943, the Director filed his complaint in the circuit court in equity for the purpose of foreclosing his lien on the assets in the hands of the trustee for the unemployment compensation contributions due the State of Illinois. These two cases were thereafter consolidated. On order of the court, the funds in the hands of the trustee were impounded with the clerk of the court to abide the result of the suit. On motion and by leave granted, the United States of America was substituted as a party to the suit in lieu of the Collector of Internal Revenue, and he was dismissed out of the case.

Upon a hearing, a decree was entered finding that the lien of the Director of Labor of the State of Illinois on the assets involved gave to him priority of payment to the extent of 90 per cent of the funds on deposit with the clerk and that the United States was entitled to priority of pay-

ment as to the remaining 10 per cent of said funds on deposit. From this decree the United States perfected the appeal.

The contention of appellee is that he was entitled to priority of payment to the extent of 81 per cent of the funds on deposit with the clerk under section 602(a) of the Revenue Act of 1943. (26 U.S.C. 602(a).) Section 602(a), in so far as material to the present inquiry, is as follows:

"Section 602. Credit Against Federal Unemployment Taxes for Years 1936 to 1942.—(a) Allowance of Credit Against Tax for 1936, 1937, and 1938,—Against the tax imposed by section 901 of the Social Security Act for the calendar year 1936, 1937, or 1938, any taxpayer shall be allowed credit (if credit is not allowable under section 902 of such Act) for the amount of contributions paid by him into an unemployment fund under a State law—

"(1) without regard to the date of payment, to the extent hereinafter provided in this subsection;

"(2) Without regard to the date of payment with respect to wages paid after September 19, 1939;

"(3) Without regard to the date of payment, if the assets of the taxpayer were, at any time during the period August 11, 1939, to October 8, 1939, inclusive, or the period October 9, 1940, to December 6, 1940, inclusive, or the period September 21, 1941, to November 18, 1941, inclusive, in custody or control of a receiver, trustee, or other fiduciary appointed by, or under the control of, a court of competent jurisdiction.

"The provisions of the Social Security Act in force prior to February 11, 1939 (except the provision limiting the credit to amounts paid before the date of filing returns), shall apply to allowance of credit under this subsection: except that the amount of credit against the tax for the calendar year 1936, 1937, or 1938, for contributions paid after December 6, 1940, shall not (unless the credit is

allowable on account of paragraph (2) or (3)) exceed 90 per centum of the amount which would have been allowable as credit on account of such contributions had they been paid before the last day upon which the taxpayer was required under section 905 of such Act to file a return for such year."

As we construe this section, it only removes the restriction as to the time of payment of taxes on wages accrued in the years 1936, 1937, and 1938, in cases where the assets of the taxpayer were in the custody or control of a receiver, trustee or other fiduciary appointed by, or under the control of, a court of competent jurisdiction, during the periods mentioned in paragraph (3) of subsection (a) of said section 602. As so construed, it has no application to the facts in this case. The assets of the insolvent taxpayer were not in the custody or control of a receiver during any period mentioned in section 602(a)(3) of the Revenue Act of 1943. The taxes with which we are here concerned were not subject to the provisions of that section.

Appellant claims the right of priority of payment of the taxes due the United States because of the priority granted to the United States by section 3466 of the Revised Statutes of the United States (31 U.S.C. 191,) which reads as follows: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Appellee, in an effort to demonstrate that it was not the intention of Congress that claims for taxes due under

the Federal Unemployment Tax Act should be subject to the priority of payment provisions of said section 3466, has presented an interesting and illustrative argument. He has analyzed and presented both the State and Federal acts and their relations to each other. It is pointed out that the Federal act is not in itself a complete unemployment compensation law; that it merely provides for the collection of payroll taxes, but makes no provision for the payment of unemployment compensation to employees; that this function is left entirely to the States. It is further pointed out that section 902 of the Social Security Act of 1935, which is section 1601 of the Internal Revenue Code of 1939, allowed a credit against the Federal taxes imposed for payments made into an approved State unemployment compensation fund to the extent of 90 per cent of the amount of the taxes due under the Federal act, if such payments were made to the State fund before the last due date of the Federal return of the employer; that the last due date of such return was January 31 of the year following that in which the wages were paid.

It is further pointed out that if payment of the State contributions was not made before the due date of the Federal return, and payment was made thereafter, but before June 30 next following such due date, a credit of 90 per cent of the credit, or 81 per cent, is allowed; that if the assets of the taxpayer are in the custody or control of a court of competent jurisdiction at any time between the last due date of the return and June 30 following, this limitation is removed and the full credit of 90 per cent is allowed; that by the Revenue Act of 1940, such limitation on the time of the payment, in order to obtain the credit, was extended to December 6, 1940; that if the assets of the taxpayer were in the hands of a receiver at any time during the fifty-nine day period following December 6, 1940, and such State contributions were paid by the receiver during that time, he would be entitled to credit for

the amount paid to the State, up to 90 per cent of the Federal taxes; that by the Revenue Acts of 1941 and 1943, this policy was continued and the limitations as to the time of payment, in order to obtain the credit, were further extended.

From this it is argued that the provisions relating to credits allowed on the Federal taxes for unemployment contributions paid to the State, up to 90 per cent of the taxes due the Federal government, were intended to encourage the employer to promptly pay his State contributions; that it was not contemplated by Congress in the enactment of this legislation that more than 10 per cent of the 3 per cent Federal payroll taxes should belong to the Federal government; that the purpose of Congress in providing that 10 per cent of the Federal taxes be paid to the Federal government, regardless of the amount which the taxpayer might pay to the State, was to create a fund for the use of the Federal government in the administration of the Federal act and its supervision of the administration of the State acts by the several States.

From this it is said that in reality the Federal taxes are levied only for the purpose of co-ordinating the administration of the acts of the several States with the Federal act, under the supervision of the National government. It is further contended that the primary purpose of the Federal act was to encourage the States to pass State unemployment compensation acts and to assist the States in the administration of such acts.

Upon this basis it is contended that it was the intention of Congress that the Federal taxes, except as to the amount of 3/10 of one per cent of the payrolls were, in fact, levied for the use and benefit of the States and that, other than the 10 per cent for which no credit can be taken for the payments into a State unemployment compensation fund, the Federal government has no interest therein; that such 10 per cent reserved to the Federal government

is for the sole purpose of defraying the expenses of .administering the acts.

This argument, however plausible and logical it may seem, loses sight of the fact that the taxes imposed by the Federal act at the rate of 3 per cent on the payrolls of those employers having eight or more employees, are taxes imposed by, and which belong to, the Federal government. All of the provisions pointed out concerning credits for taxes paid into the unemployment compensation fund of the State relate to the administration of the act. They are administrative in character. By the Federal act, taxes are levied at the rate of 3 per cent on the payroll of every employer in the United States employing eight or more persons. The act was sustained by the Supreme Court of the United States in *Steward Machine Co.* v. *Davis,* 301 U. S. 548, 57 S. Ct. 883, because the payments exacted thereunder were found to be taxes levied under the powers conferred on Congress by section 8 of article I of the constitution. Such payments were held to be excise taxes.

Under the act, therefore, excise taxes are levied by the Congress upon employers at the rate of 3 per cent of their payrolls. The fact that the act makes provision for a reduction in the amount of the taxes, or a surrender or waiver of a portion thereof, equal to the amount paid by the taxpayer into an approved State unemployment compensation fund, up to 90 per cent of the taxes due, does not change the character of the act as one levying or imposing taxes. The full amount of 3 per cent of the payroll constitutes taxes due the Federal government. The waiver of a portion thereof for the purpose of encouraging employers to promptly pay their State unemployment compensation contributions does not change the character of payments exacted by the Federal act. In the first instance, 100 per cent of the taxes levied constitute taxes due the Federal government. The full amount continues to be taxes due

the Federal government either until it is all paid to the Federal government, or 90 per cent is paid to the State and the balance to the Federal government. The provisions of the act for credits equal to the amount paid to the State, up to 90 per cent of the taxes due the Federal government, being administrative in character, do not change the character of the taxes imposed. They are still taxes due the Federal government and constitute a debt due to the United States within the purview of section 3466 of the Revised Statutes.

The cases cited and relied upon by appellee are not in point. Those cases involved payments due the United States of an entirely different character, from those here involved. *United States* v. *Guaranty Trust Co.* 280 U. S. 478, 50 S. Ct. 212, involved money due the United States under the Transportation Act of 1920.

*Mellon* v. *Michigan Trust Co.* 271 U. S. 236, 46 S. Ct. 511, involved a claim due the Director General of Railroads for transportation charges against an insolvent corporation. In *United States* v. *Marxen,* 207 U. S. 200, 59 S. Ct. 811, the claim was for money due the Federal Housing Administrator. In neither of those cases was the claim for taxes due the United States.

It has been repeatedly held by the Supreme Court that taxes due the United States are debts due the United States, within the meaning of section 3466 of the Revised Statutes. *Price* v. *United States,* 269 U. S. 492, 46 S. Ct. 180; *Beaston* v. *Farmers' Bank,* 12 Pet. 102, 9 L. ed. 1017; *United States* v. *Bank of North Carolina,* 6 Pet. 29, 8 L. ed. 29.

Appellee also cites and relies on the case of *Rivard* v. *Bijou Furniture Co.* 67 R. I. 251, 21 Atl. 2d 563. It is true this case sustains the contentions of appellee. However, we think the court in that case overlooked the fact that taxes due under the Federal Unemployment Tax Act

are taxes due the United States and, consequently, are debts due the United States within the scope of section 3466 of the Revised Statutes.

It is elementary that the priority given the United States by section 3466 cannot be impaired or superseded by State laws. *United States* v. *Oklahoma*, 261 U. S. 253, 67 L. ed. 638.

As to that part of appellant's claim in cause No. 28474 which is for Federal insurance contribution taxes, such taxes are not subject to the credits allowed under section 602(b) of the Revenue Act of 1943. It follows that the claim of appellant in cause No. 28490 and that portion of appellant's claim in cause No. 28474 which is for Federal insurance contribution taxes were debts due the United States and were entitled to priority of payment out of the assets of the insolvent debtors, unless the State of Illinois had such a lien on such assets as would remove them from the priority rights granted by section 3466 of the Revised Statutes.

It is claimed by appellee that he did have such a lien. This contention is based upon section 26(a) of the Unemployment Compensation Act of Illinois. (Ill. Rev. Stat. 1943, chap. 48, par. 243.) That section, in so far as material, reads as follows: "A lien is hereby created in favor of the Director upon all the personal property or rights thereto owned or thereafter acquired by any employer and used by him in connection with his trade, occupation, profession or business, from whom contributions, interest or penalties are or may hereafter become due. Such lien shall be for a sum equal to the amount at any time due from such employer to the Director on account of contributions, interest and penalties thereon. Such lien shall attach to such property at the time such contributions, interest or penalties became, or shall hereafter become, due."

It is contended by appellant that the lien given by this section of the statute is not a perfected, fixed lien; that at most it is merely an inchoate right to a lien. It will be remembered that the only thing done by the Director to establish or to enforce such lien, as against the property of the debtor, was the filing of this suit on April 2, 1943, whereas the assignment was made by the insolvent debtor on January 9, 1939. The right to priority of payment under section 3466 attaches, if at all, at the time of the assignment.

In the very late case of *United States* v. *Waddill, Holland & Flinn,* in an opinion filed January 2, 1945, the Supreme Court of the United States had before it a similar question. (65 S. Ct. 304.) The case arose in Virginia. The debtor had made an assignment for the benefit of creditors. Claims were made by the United States for unpaid taxes under the Federal Unemployment Tax Act and for a debt arising out of a Federal Housing Administration transaction. The landlord of the debtor, twelve days after the assignment was made, obtained a distress warrant, which was levied on the debtor's property. The applicable provisions of the statutes of Virginia gave to the landlord the right to levy distress for six months' rent upon "any goods of the lessee * * * found on the premises, or which may have been removed therefrom not more than thirty days * * * for not more than six months rent." The distraining landlord claimed a lien on the property of the debtor and a priority of payment over the claim of the Federal government, based upon the lien given him by statute on the goods of the insolvent debtor. The Supreme Court of Virginia held that the provisions of the statute of that State, referred to, "give the landlord a lien which is fixed and specific and not one which is merely inchoate, and that such a lien exists independent of the right of distress or attachment which are merely rem-

edies for enforcement." In disposing of that question, the Supreme Court of the United States said:

"The words of section 3466 are broad and sweeping and, on their face, admit of no exception to the priority of claims of the United States. Thelusson v. Smith, 2 Wheat. 396, 425, 4 L. Ed. 271; United States v. Texas, supra, 314 U. S. at page 484; 62 S. Ct. at page 352, 86 L. Ed. 356. But this court in the past has recognized that certain exceptions could be read into this statute. The question has not been expressly decided, however, as to whether the priority of the United States might be defeated by a specific and perfected lien upon the property at the time of the insolvency or voluntary assignment. * *. * It is within this suggested exception that the landlord and the municipality seek to bring themselves. Once again, however, we do not reach a decision as to whether such an exception is permissible for we do not believe that the asserted liens of the landlord and the municipality were sufficiently specific and perfected on the date of the voluntary assignment to cast any serious doubt on the priority of the claim of the United States. * * *

"The Supreme Court of Appeals of Virginia has here held that these sections 'give the landlord a lien which is fixed and specific, and not one which is merely inchoate, and that such a lien exists independent of the right of distress or attachment, which are merely remedies for enforcing it.' 182 Va. at page 363, 28 S. E. 2d at page 746. It has also held that such a lien 'relates back to the beginning of the tenancy,' 182 Va. at page 364, 28 S. E. 2d at page 746, thus giving it force and effect on date of the voluntary assignment. These interpretations of the Virginia statutes, as propositions of state law, are binding. But it is a matter of federal law as to whether a lien created by state statute is sufficiently specific and perfected to raise questions as to the applicability of the priority

given the claims of the United States by an act of Congress. If the priority of the United States is ever to be displaced by local statutory lien, federal courts must be free to examine the lien's actual legal effect upon the parties. A state court's characterization of a lien as specific and perfected, however conclusive as a matter of state law, cannot operate by itself to impair or supercede a longstanding Congressional Declaration of priority. * * *

"Tested by its legal effect under Virginia law, the landlord's lien in this instance appeared to serve 'merely as a caveat of a more perfect lien to come.' People of State of New York v. Maclay, supra, 288 U. S. at page 294, 53 S. Ct. at page 324, 77 L. Ed. 754. As of the date of the voluntary assignment, it was neither specific nor perfected. It gave the landlord only a general power over unspecified property rather than an actual interest in a definitive portion or portions thereof. * * *

"Nor was the statutory lien perfected as a matter of actual fact, regardless of how complete it may have been as a matter of state law. The tenant was divested of neither title nor possession by the silent existence of the landlord's statutory lien on the date of the assignment. Only after the lien was actually asserted and an attachment or a distraint levied, enabling the landlord to satisfy his claim out of the seized goods, could it be argued that such goods severed themselves from the general and free assets of the tenant from which the claims of the United States were entitled to priority of payment. Prior to that time the lien operated to do no more than prevent the removal of goods from the premises by certain classes of persons, Va. Code par. 5524, and give the landlord priority in distribution under state law provided that the goods remained on the premises. Such a potential, inchoate lien could not disturb the clear command of section 3466 of

the Revised Statutes. Something more than a 'caveat of a more perfect lien to come' was necessary."

It seems to us that the above language of the court is conclusive in this case. We are forced to the conclusion that the taxes due the Federal government were debts due the United States within the purview of section 3466 of the Revised Statutes. It is equally clear that appellee did not have such a lien upon assets of the insolvent debtor, under section 26(a) of the Unemployment Compensation Act of Illinois, as to give him priority of payment over the claim of the Federal government for Federal insurance contribution taxes in cause No. 28474, or the claim of appellant in cause No. 28490. In view of this, appellant was entitled to priority of payment over the claim of the State of Illinois.

In cause No. 28474, the judgment of the circuit court is reversed and the cause is remanded to that court, with directions to enter an order directing the payment of the funds on deposit first to appellant for that portion of his claim which is for Federal insurance contribution taxes, with lawful interest thereon, and any balance remaining to the Director of the Department of Labor of the State of Illinois. The order will provide that the amount paid to the Director be credited on the claim of appellant against the insolvent debtor for unemployment compensation taxes.

In cause No. 28490, the decree of the circuit court is reversed and the cause is remanded to that court, with directions to enter a decree finding that the United States is entitled to priority of payment to the extent of the funds on deposit, and ordering distribution accordingly.

*Reversed and remanded, with directions.*