**UNITED STATES v. SPENCER (COMMONWEALTH OF MASSACHUSETTS, DIVISION OF EMPLOYMENT SECURITY, Intervener).**

Civil Action No. 3671.

District Court, D. Massachusetts.

May 2, 1946.

Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., Sewall Key, Acting Asst. Atty. Gen., and A. Barr Comstock and Andrew D. Sharpe, Sp. Assts. to Atty. Gen., for plaintiff.

Frank C. Hession, of Boston, Mass., Joseph J. Leonard, Designee of Atty. Gen., and John A. Brennan, Designee of Atty. Gen., for Massachusetts, Division of Employment Security, applicant for intervention, for defendant.

WYZANSKI, District Judge.

This case, tried upon an agreed statement of facts, raises one important question: When an insolvent has assets insufficient to pay his obligations both under Title IX of the Social Security Act, 42 U.S.C.A. § 1101 et seq., and under an approved state unemployment compensation act, how shall his assets be distributed? The case originally presented other questions, but they are easily solved in view of the recent ruling of the Supreme Court of the United States that in the distribution of insolvent estates the claim of the United States for taxes under Title VIII of the Social Security Act, 42 U.S.C.A. § 1001 et seq., has priority over the claim of a state for contributions under a state unemployment compensation act. People of State of Illinois ex rel. Gordon v. United States, 66 S.Ct. 841.

In the case at bar these are the facts: February 3, 1939, Somerville Sales & Service, Inc., being insolvent in the bankruptcy sense, made a common law assignment for the benefit of creditors to Spencer. The United States Commissioner of Internal Revenue thereafter assessed against the corporation $963.08 on account of the assignor's 1938 taxes under Title IX of the

Social Security Act, $690.05 on account of the assignor's 1938 and 1939 taxes under Title VIII of the Social Security Act and $21 on account of the assignor's 1939 United States capital stock taxes. October 6, 1939, Spencer paid on account of the Title VIII 1938 taxes $331.39. Spencer used the remaining assets to pay $803.72 to the Commonwealth of Massachusetts on account of obligations of his assignor under the Massachusetts Unemployment Compensation Act, Mass. G.L. (Ter.Ed.) c. 151A. Of this $803.72 $775.34 represented 1938 contributions, and $28.38 represented 1939 contributions. The Commonwealth has agreed to pay over this $803.72 to the United States if the payment to the Commonwealth was in disregard of the priority of the United States under R.S. § 3466, 31 U.S.C.A. § 191. The United States has agreed that if it prevails, judgment in this case shall be limited to $803.72.

■ My view at the time of the argument in court was that (although the United States had not abandoned or impaired its right under R.S. § 3466 to have absolute priority with respect to the claim for $21 plus interest on account of capital stock taxes and also the claim for $690.05 plus interest less $331.39 on account of Title VIII Social Security taxes) the United States could not object to having 90 per cent of its claim to $963.08 for 1938 taxes on account of Title IX of the Social Security Act reduced by the assignee's prior payment to the Commonwealth of amounts due for the year 1938 under the Massachusetts Unemployment Compensation Act. In short I thought that the United States could recover in this case its capital stock taxes, its Title VIII taxes, and 10 per cent of its Title IX taxes, but could not recover 90 per cent of its Title IX taxes. The first part of my tentative conclusion was later supported by the authoritative ruling of the Supreme Court already cited; the second part, in my view, has not yet been settled.

■ At the argument of this case I inclined to regard Sec. 902 of the Social Security Act as giving taxpayers subject to Title IX a right to discharge (up to 90 per cent of the total amounts due) their obligations to the United States by seasonable payment to approved state unemployment compensation funds (provided, of course, that the taxes and contributions covered what Congress had treated as comparable periods of employment and that the state fund had been approved). It appeared to me as though in Section 902 of the Social Security Act the Congress of the United States had in effect said that a taxpayer under Title IX had with respect to 90 per cent of the taxes due under that title an option as to the government to which he made payment. It was as though the government had imposed an obligation to pay either the government or X, and the obligee chose to satisfy the obligation by paying X. Compare Williston, Contracts, 2d Ed., Sec. 781.

The question, nicely analyzed, seemed to me to be one not of priority but of alternative obligation.

■ The force of that analysis seemed to me the more persuasive when the true nature of Title IX of the Social Security Act as portrayed in Charles C. Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293, was stressed. As to 90 per cent of the taxes under that title the objective of Congress was not to collect federal revenues but to stimulate the creation of and payment to state unemployment compensation funds. It would defeat obvious Congressional intent to lay down a rule which required that this 90 per cent should go to satisfy a Title IX tax claim instead of going to the direct benefit of claimants under state unemployment compensation plans.

The correctness of the foregoing reasoning seemed to me to be proved by a supposititious case. Suppose A, an insolvent, with $200 in assets, owed $100 to the United States for 1938 Title IX taxes, $90 to Massachusetts for 1938 unemployment compensation contributions and $200 to general creditors. Can it be supposed that a court that was sensitive to the principle of marshalling assets would distribute the assets so that the United States received the first $100, Massachusetts the second $90, and the general creditors $10? To do that would give the two governments more than Congress contemplated and restrict the

general creditors to 5 cents on the dollar. Would not a court that was mindful of the strict legal rights of the two governments, of the policies declared in their legislation and of the rights of the general creditors to be subject to no greater priorities than those governmental rights and policies require, distribute $10 to the United States, $90 to Massachusetts, and $100 or 50 cents on the dollar to the general creditors? This would allow the two governments to receive all that they claimed from the insolvent before his insolvency and would follow the rules of priority established by R.S. § 3466.

I do not find any reason to change my views in the light of the subsequent opinion delivered by the Supreme Court of the United States in People of the State of Illinois ex rel. Gordon v. United States, 66 S.Ct. 841. An examination of the original transcript of record in that case shows that the facts in that case were these. A trustee or assignee for the benefit of creditors had in his hands $1,010.81 (R. 18 par.5). Against these there were asserted the following claims for taxes or obligations due from the assignor: United States capital stock taxes, $58.73 plus interest; United States Title VIII, Social Security Act taxes, $1,065.52 plus interest; United States Title IX Social Security Act taxes, $1,065.52 plus interest; and Illinois unemployment compensation contributions $721.29 plus interest (R.2). In short, the Title VIII taxes exceeded the available funds. The Supreme Court of Illinois in its opinion (People, for Use of Murphy, v. Chicago Waste & Textile Co., 391 Ill. 29, 62 N.E. 2d 537) held that the United States was entitled to priority on account of the $1,065.52 plus interest which represented Title VIII Social Security Act taxes (R. 50, 51). It, therefore, entered judgment giving the United States priority to the entire $1,010.81 (R. 34). The appropriate Illinois state official filed in the Supreme Court of the United States a petition for certiorari which quite correctly pointed out that the only issue as to which he sought review was whether Title VIII taxes were entitled to priority over Illinois unemployment compensation contributions—the issue as to the priority of Title IX taxes being moot.

(See petition for certiorari p. 11, note; compare, "questions presented," pp. 6, 7. See also petitioner's reply to brief in opposition p. 3.) Counsel for the United States mistakenly asserted that the Illinois court had given the United States priority with respect to Title IX taxes as well as to Title VIII taxes (Br. Opp. p. 4, lines 17-20) and urged that the question presented to the Supreme Court of the United States was "whether the claim of the United States * * * for unpaid capital stock taxes, insurance contribution [Title VIII] taxes, and unemployment compensation [Title IX] taxes, is entitled to prior payment * * * over state claims * * * for unpaid unemployment compensation contributions." (Br. 2)

In support of his contention the Illinois state official urged that state unemployment compensation claims were not subject to the priority of any federal tax claim whatsoever whether it be a capital stock tax claim or a Title VIII tax claim. His view was, as stated by Mr. Justice Black [66 S.Ct. 843], that "Congress * * * intended in effect to amend Section 3466, by making its priority provisions inapplicable to state unemployment tax claims. * * * the state here urges us to treat its claim 'tantamount to a claim of the United States.'" The Illinois official did not urge (and it would have raised merely a moot question to have urged) that the United States' Title IX claim was subject to reduction by payment to a state fund.

Mr. Justice Black answered the precise contention presented by Illinois. He ruled that the priority accorded by Section 3466 to the general class of obligations due to the United States does not apply to obligations due to the Illinois unemployment compensation fund, and that therefore the Illinois claim does not defeat the priority of the United States under Section 3466.

Mr. Justice Black had no occasion to consider the problem whether as to 90 per cent of the amount due for Title IX taxes the United States had not given the taxpayer the option to make payment to Illinois instead of to the United States. That, as I have said, is a problem less of priorities than of the discharge of alternative obligations and of marshalling assets. In

other words, Mr. Justice Black did not specifically consider whether a possible arrangement of claims ought not to be as follows: In a definitely preferred category the claim for capital stock taxes, the claim for Title VIII taxes, and the claim for 10 per cent of Title IX taxes; and in what I can best describe as a suspended category the claim for 90 per cent of Title IX taxes and the claim for state unemployment compensation contributions, the taxpayer or his assignee or a court charged with administration of insolvent estates having the right to elect to pay the state and defeat 90 per cent of the United States Title IX claim; but if that election is not exercised the United States to have the customary Section 3466 priority for the 90 per cent as well as the 10 per cent of its Title IX tax claim. Such a solution would not operate to give a state compensation claim a priority "tantamount to a claim of the United States" [see paragraph 5 of Mr. Justice Black's opinion]; it would merely allow a taxpayer his statutory option or alternative to discharge 90 per cent of his obligation to pay a United States Title IX tax claim by instead making payment to an approved state unemployment compensation fund.

It seems to me, as it apparently seemed to the Supreme Court of Illinois (R. 54 par. 2; People v. Chicago Waste & Textile Co., 391 Ill. 29, 62 N.E.2d 537, 544, last paragraph), that that solution is the correct one. This course is not precluded by People of State of Illinois ex rel. Gordon v. United States, since on a careful analysis the issue of that possible marshalling of assets (1) was not raised by the record before the Supreme Court of the United States in that case and (2) was not considered by Mr. Justice Black in his opinion in that case.

Ordered that the Commonwealth of Massachusetts shall pay out of the $803.72 received from Spencer [1] on account of capital stock taxes, $21 together with 6% interest from the due date to the date of judgment; [2] on account of Title VIII taxes, $690.05 less $331.39 together with [a] interest on $690.05 at 6% from the due date until October 6, 1939; and [b] interest at 6% from October 6, 1939 until

the date of judgment upon an amount arrived at by adding $690.05 and the interest just provided in 2 [a] and by subtracting $331.39; and [3] on account of Title IX taxes, $96.31 with interest at 6% to the date of judgment. As stipulated, the judgment will not carry interest or costs.