PAINTER'S LOCAL UNION NO. 567 OF THE BROTHERHOOD OF PAINTERS, DECORATORS AND PAPERHANGERS OF AMERICA, APPELLANT AND CROSS–RESPONDENT, v. TOM JOYCE FLOORS, INC., A NEVADA CORPORATION; CHARLES FOX AND DEAN HART, DBA NEW EMPIRE FLOORS, RESPONDENTS AND CROSS–APPELLANTS.

No. 4790

January 11, 1965

398 P.2d 245

[Rehearing denied February 9, 1965]

*Marshall A. Bouvier,* of Reno, and *Neyhart & Grodin* and *Dwayne Beeson,* of San Francisco, for Appellant and Cross-Respondent.

*Ernest S. Brown* and *Peter I. Breen,* of Reno, for Respondents and Cross-Appellants.

**O P I N I O N**

By the Court, THOMPSON, J.:

On this appeal we must decide whether a state court has jurisdiction to determine the legality of a collective bargaining agreement containing a nondiscriminatory hiring hall provision before the agreement is signed by the employer and the union. The lower court assumed jurisdiction to make that determination, and awarded damages to the picketed employer.[1] It is conceded that the employer's business operations affect commerce within the meaning of the National Labor Relations Act as amended, 61 Stat. 136–159 (1947), 29 U.S.C., §§ 141–187 (1958). The court below found that the union had picketed the employer's jobs for an unlawful purpose— that of coercing the employer to sign an agreement which was in violation of Nevada's Right to Work law (NRS 613.230–613.300) because it contained a nondiscriminatory hiring hall provision. We have concluded that a state court lacks jurisdiction to determine the legality of a proposed collective bargaining agreement before the agreement is signed by the employer and the union (Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn, 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179, the second Schermerhorn case), and therefore reverse the judgment. We do not now decide whether a nondiscriminatory hiring hall provision (one requiring an employer to contact the union for employment applicants, but at the same time requiring the union to dispatch such

---

[1]Two cases were consolidated for trial below. Tom Joyce Floors. Inc. v. Painter's Local 567, and Charles Fox and Dean Hart dba New Empire Floors v. Painter's Local 567. Tom Joyce was awarded $843.63 in damages, and New Empire Floors $1.00. They have cross-appealed, contending that the award of damages was inadequate as a matter of law. Because of our conclusion as to the appeal, we do not reach the issue raised by the cross-appeal.

applicants in a designated order without regard to union membership or nonmembership) violates the Right to Work law of this state. On this point see Annot., 38 A.L.R.2d 413 (1954); Branham v. Miller Electric Co., 237 S.C. 540, 118 S.E.2d 167 (1961); Kaiser v. Price-Fewell, Inc., 235 Ark. 295, 359 S.W.2d 449 (1962); cf. Building Trades Council v. Bonito, 71 Nev. 84, 280 P.2d 295 (1955); Kovarsky, Union Security, Hiring Halls, Right to Work Laws and the Supreme Court, 15 Lab. L.J. 659 (1964). Nevada's answer to that question must await another case—one in which the collective bargaining agreement has been negotiated and executed by the employer and the union.

We are here dealing with the doctrine of federal preemption as applied to the Taft Hartley Act and particularly to §§ 8(a)(3) [61 Stat. 140 (1947), 29 U.S.C. § 158(a)(3) (1962)] and 14(b) [61 Stat. 151 (1947), 29 U.S.C. § 164(b) (1958)] thereof. Preemption rests upon the supremacy clause of the federal constitution,[2] and deprives a state of jurisdiction over matters embraced by a congressional act regardless of whether the state law coincides with, is complementary to, or opposes the federal congressional expression. Bethlehem Steel Co. v. New York State Labor Relations Bd., 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234. Accordingly, congressional action in the area of union security precludes state enforcement of its own legislation in that area, unless Congress has also legislated to allow the states to act in areas where Congress normally would be deemed to have preempted the field. Section 14(b) of the Taft Hartley Act is such legislation. It provides, "Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which

[2]U. S. Const. art. VI, cl. 2, reads, "This Constitution and the Laws of the United States which shall be made in Pursuance thereof * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

such execution or application is prohibited by State or Territorial Law." Thus Congress recognized state power to outlaw or restrict the closed shop and related union security devices, which power was sustained by the United States Supreme Court in Lincoln Fed. Labor Union v. Northwestern Iron & Metal Co., 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212.

Were it not for § 14(b) a state could not enact a Right to Work law applicable to employers engaged in interstate commerce because the federal law, § 8(a)(3) had preempted the field by authorizing agreements conditioning employment on membership in a labor organization. The latter section provides in part, "(a) It shall be an unfair labor practice for an employer * * * (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization; *Provided,* That nothing in this subchapter or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization * * * to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later * * *." A union shop (one requiring union membership after hiring as a condition of employment for the duration of the contract) is specifically authorized by § 8(a)(3), and in NLRB v. General Motors Corp., 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670, the United States Supreme Court recognized the agency shop (one requiring, as a condition of employment for the duration of the contract, a worker to pay a fixed sum each month to defray expenses of the union, whether or not he is a member of the union) as a form of union security permissible under § 8(a)(3). Indeed, the high court in Local 357, Int'l Bhd. of Teamsters v. NLRB, 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11, decided that a nondiscriminatory hiring hall provision, if operated in a democratic fashion, is legal and does not constitute a per se violation of §

6

8(a)(3). See also Local 100, United Ass'n of Journeymen v. Borden, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638.

It is thus apparent that the union security devices authorized by § 8(a)(3) may, in some instances, be the same devices prohibited by a state law authorized by § 14(b). Justice White, writing the first Schermerhorn opinion, Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn, 373 U.S. 746, 751, 83 S.Ct. 1461, 1464, 10 L.Ed. 2d 678, 682, pointed up the problem in the following language, "As is immediately apparent from its language, § 14(b) was designed to prevent other sections of the Act from completely extinguishing state power over certain union security arrangements * * *. The connection between the § 8(a)(3) proviso and § 14(b) is clear. Whether they are perfectly coincident, we need not now decide, but unquestionably they overlap to some extent. At the very least, the agreements requiring 'membership' in a labor union which are expressly permitted by the proviso are the same 'membership' agreements expressly placed within the reach of state law by § 14(b) * * *." See also Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Bd., 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691. In Schermerhorn I the high court favored state rather than federal determination of the validity of an agency shop agreement, but did not decide the beginning point of the states' power to act under § 14(b). However, that issue was discussed upon reargument in Schermerhorn II, Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn, supra.

Justice Douglas, writing for a unanimous court in Schermerhorn II, stated, "As a result of § 14(b), there will arise a wide variety of situations presenting problems of the accommodation of state and federal jurisdiction in the union-security field. As noted, *Algoma Plywood Co.* v. *Wisconsin Board, supra,* upheld the right of a State to reinstate with back pay an employee discharged in violation of a state union-security law. On the other hand, picketing in order to get an employer to execute an agreement to hire all union labor in violation of a state union security statute lies exclusively in

the federal domain *(Local Union 429* v. *Farnsworth & Chambers Co.,* 353 U.S. 969, and *Local No. 438* v. *Curry,* 371 U.S. 542), because state power, recognized by § 14(b), begins *only with actual negotiation and execution of the type of agreement described by § 14(b).* Absent such an agreement, conduct arguably an unfair labor practice would be a matter for the National Labor Relations Board under *Garmon.*" The quoted language, though dictum, cannot be ignored, and must be deemed to rule the instant case. State power under § 14(b) begins only after the collective bargaining agreement between the employer and the union has been signed. Accordingly, the union picketing here involved to induce the employer to sign a collective bargaining agreement containing the union security hiring hall device was not enjoinable, nor could such picketing be the predicate for a state court damage action.

Reversed, and the actions below are dismissed for want of jurisdiction.

McNAMEE, C. J., and BADT, J., concur.