## Richmond

ROBERT B. MOORE v. LOCAL No. 10, PLUMBERS AND STEAMFITTERS
UNION, AND T. A. TALLEY, JR. & CO., INC.

January 18, 1971.

Record No. 7268.

Present, Snead, C.J., I'Anson, Gordon, Harrison, Cochran and Harman, JJ.

G. *William White, Jr.*, for plaintiff in error.

*Martin F. O'Donoghue* (D.C.) (*Beecher E. Stallard*, on brief),
for defendants in error.

HARRISON, J., delivered the opinion of the court.

The court below dismissed appellant's action on the ground that
the activity complained of in his motion for judgment came within
the proscriptions of the Taft-Hartley Act[1] thereby preempting the
state court of jurisdiction.

Moore filed his motion against T. A. Talley & Co., Inc., hereinafter
called "Talley", and Local No. 10, Plumbers and Steamfitters Union,
hereinafter called "the Union", seeking to recover both compensatory
and punitive damages.

---

[1] The National Labor Relations Act (Wagner Act), 49 Stat. 449 (1935) was
amended and supplemented by the Labor Management Relations Act (Taft-Hartley
Act), 29 U. S. C. §§ 141-87 (1964). Section 14 (b) appears at 29 U. S. C. § 164 (b)
(1964).

He alleged that he is a former employee of Talley and a former member of the Union, and in 1955 he had been illegally fined and suspended from the Union for an alleged violation of its rules; that in 1967 Talley entered into an agreement by which the Union became the exclusive bargaining agent for its members who worked for Talley; that Talley encouraged its employees, including appellant, to become members of the Union; that at Talley's request Moore applied to become a member of the Union and was advised that he could not be considered for reinstatement, or become a member, unless and until he paid the fine which it had assessed against him, back dues and a reinstatement fee; that he refused to do so and was denied membership in the Union; and that one month later he was discharged from employment by Talley. Moore further alleged that he was discharged *solely* because he was not a member of the Union and that Talley and the Union *acted in concert* to deny him employment, all in violation of the provisions of Article 3, as amended, of Chapter 4, Title 40.1 of the Code of Virginia, commonly known as Virginia's Right-to-Work Law.

Talley and the Union filed motions to dismiss on the ground that Moore's action was based upon an unfair labor practice under the National Labor Relations Act, and that the said Act gave sole and exclusive jurisdiction to the National Labor Relations Board to the exclusion of the authority of the court below. The motions were sustained and this appeal ensued.

While we do not find in the record a copy of the collective bargaining agreement signed by Talley and the Union in 1967, counsel for the appellees stated at argument that there was such an agreement and that it did not contain a "union-security clause".

We are here dealing with the doctrine of federal preemption as applied to the Taft-Hartley Act. Section 8(a) (3) [61 Stat. 140 (1947), 29 U. S. C. §158(a) (1962)] of the Act, while prohibiting a closed-shop agreement, sanctions a union-shop agreement. That is, an agreement between an employer and a union to require membership in a union as a condition of continued employment provided specified conditions are met. However, § 14(b) [61 Stat. 151 (1947), 29 U. S. C. § 164(b) (1958)] of the Act provides that, "nothing in this act shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any state or territory in which such execution or application is prohibited by state or territorial law".

Virginia Code § 40.1-59 expressly prohibits agreements between

any employer and any labor union whereby membership in a labor union is made a condition of employment or continuation of employment in this state.

Moore concedes that the conduct of the appellees is arguably an unfair labor practice under §§ 8(a) and (b) of the Act. However, he asserts that this case constitutes an exception to the general rule, arguing that it arises out of the violation of a statutory right and that the conduct complained of is made a criminal act by statute and involves the maintenance of domestic peace. He relies on *United Construction Workers* v. *Laburnum Construction Corp.*, 347 U. S. 656, 74 S. Ct. 833, 98 L. Ed. 1025 (1954), *International Association of Machinists* v. *Gonzales*, 356 U. S. 617, 78 S. Ct. 923, 2 L. Ed. 2d 1018 (1958), *Automobile Workers* v. *Russell*, 356 U. S. 634, 78 S. Ct. 932, 2 L. Ed. 2d 1030 (1958), and *Linn* v. *Plant Guard Workers*, 383 U. S. 53, 86 S. Ct. 657, 15 L. Ed. 2d 582 (1966).

The Union contends that since the act of which Moore complains constitutes an unfair labor practice, a state court has no jurisdiction respecting his complaint because of federal preemption, and cites *Iron Workers* v. *Perko*, 373 U. S. 701, 83 S. Ct. 1429, 10 L. Ed. 2d 646 (1963) and *Plumbers' Union* v. *Borden*, 373 U. S. 690, 83 S. Ct. 1423, 10 L. Ed. 2d 638 (1963).

The Union recognizes the rule of *Schermerhorn II* enunciated in *Retail Clerks* v. *Schermerhorn*, 375 U. S. 96, 84 S. Ct. 219, 11 L. Ed. 2d 179 (1963) which upheld state jurisdiction and denied federal preemption. Its counsel points out, however, that *Schermerhorn II* expressly limited the recognition of state jurisdiction to implement a right-to-work law, for it was held that state power begins only with the *"actual negotiation and execution of the type of agreement described by § 14 (b)* [of the Taft-Hartley Act]", *id.* at 105, 84 S. Ct. at 223, 11 L. Ed. 2d at 185, that is, a union-shop agreement or a less vigorous form of union-security agreement.

Counsel for the Union then contends that since the 1967 collective bargaining agreement between Talley and the Union contains no union-security clause, the *Schermerhorn II* rule is not applicable to this case. The union must stand or fall on the soundness and validity of this position.

It is necessary that we reexamine appellant's motion for judgment, and, in particular, his allegation that Talley and the Union had *acted in concert* to deny him employment because he was not a member of the Union. Moore, in effect, alleges that he was discharged for non-membership in the Union pursuant to and because of an

agreement, understanding, plan of action or by deliberate design of Talley and the Union. Black's Law Dictionary 361 (4th ed. 1957) defines "concerted action" as follows: "Action that has been planned, arranged, adjusted, agreed on and settled between parties acting together pursuant to some design or scheme".

It is our opinion that there is a sufficient allegation by Moore of the existence of a union-security agreement between Talley and the Union to withstand the assault of a demurrer or motions to dismiss on the grounds stated. Even if we assume that the 1967 collective bargaining contract signed by Talley and the Union does not contain a union-security clause, Moore may still be able to prove a separate, oral or written union-security agreement between Talley and the Union. We interpret the words of § 14 (b) "execution or application of agreements" as encompassing an *oral* agreement as well as a written agreement.

True, the court in *Schermerhorn II* was speaking in the context of a written collective bargaining agreement when it said that "state power, recognized by § 14 (b), begins *only with* [the] *actual negotiation and execution of the type of agreement described by § 14 (b)*." 375 U. S. at 105, 84 S. Ct. at 223, 11 L .Ed. 2d at 185.

By the words "negotiation and execution" the court recognized that if the parties contemplate a written contract, as was the case in *Schermerhorn II*, the contract might be fully negotiated yet not consummated until reduced to writing and signed.

We do not interpret the court's language as intended to recognize state jurisdiction limited only to cases of executed written agreements. The view has been expressed in Grodin and Beeson, *State Right-to-Work Laws and Federal Labor Policy*, 52 Calif. L. Rev. 95, 108-09 (1964) that the Supreme Court has not yet determined whether § 14 (b) is applicable only to written agreements. *Kitchens* v. *Doe*, Fla., 172 So. 2d 896 (1965) and *Painter's Local 567* v. *Thomas Joyce Floors, Inc.*, 81 Nev. 1, 398 P. 2d 245 (1965), cited by the Union, did not involve consummated union agreements but picketing to induce the execution of such agreements.

In *Painter's Local 567* v. *Thomas Joyce Floors, Inc., supra*, the court stated that under *Schermerhorn II* state powers begin only after a collective bargaining agreement has been signed. *Id.* at 5, 398 P. 2d at 248. We do not construe that statement, made in the context of picketing designed to induce a union-security clause in a collective bargaining contract, as intended to eliminate oral agreements from the scope of § 14 (b). To the extent that the statement may indicate

that the scope of § 14 (b) should be limited to written agreements, we respectfully disagree.

The intent of § 14 (b) of the Taft-Hartley Act is to permit state regulation of union-security agreements which otherwise would be allowed under § 8 (a) (3) of the Act. In our opinion state regulation of such agreements, whether oral or written, is not only consistent with the intent of the Act, but also consistent with the language of § 14 (b). To hold that § 14 (b) applies only to written contracts would permit unions to thwart the purpose of that section by insisting that union-security agreements be solemnized orally and not reduced to writing.

We cannot conceive of agreeing that a written contract which violates a state right-to-work law is a proper subject of state court jurisdiction but that an equally violative oral contract is not proper for such jurisdiction.[2]

We hold that the trial court has jurisdiction to entertain this action if it involves a consummated union-security agreement, oral or written, between Talley and the Union.

The trial court therefore erred in sustaining the motion to dismiss, the effect of which was to preclude Moore from proving that he was in fact discharged because of the existence of such an agreement between appellees.

Accordingly, the judgment of the lower court is reversed and this cause is remanded and reinstated on the court's docket for such further action herein as may be indicated.

*Reversed and remanded.*

---

[2] *Contra,* Henderson, *The Confrontation of Federal Preemption and State Right-to-Work Laws,* 1967 Duke L. J. 1079 (1967).