**Henry LANGREHR, Appellee,**

**v.**

**UNITED BROTHERHOOD OF CARPENTERS & JOINERS OF AMERICA, LOCAL 772 (A.F.L.–C.I.O.), et al., Appellants.**

No. 2–56980.

Supreme Court of Iowa.

Dec. 17, 1975.

Albert J. Stafne, Jr., Stafne & Lewis, Bettendorf, for appellants.

G. Wylie Pillers, III, Pillers, Pillers & Pillers, Clinton, for appellee.

Submitted to MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP and HARRIS, JJ.

HARRIS, Justice.

Defendants appeal from an order overruling their special appearance. The special appearance challenged state court jurisdiction to enjoin an arguable labor dispute. We reverse the trial court.

Henry Langrehr (plaintiff) is a general contractor whose principal place of business is in Clinton, Iowa. Plaintiff's petition seeks an injunction and damages from the named defendant labor unions (the unions) and individuals associated with the unions. Since this appeal is from a ruling on the unions' special appearance we assume the truth of the material allegations of the petition. See *Snakenburg v. Jason Mfg., Inc.,* 261 Iowa 1083, 1084, 157 N.W.2d 110, 111 (1968).

Plaintiff asserts he commenced the construction of a warehouse and charges the unions soon instituted a picket at the construction site. Plaintiff contends none of his employees are members of or affiliated with any labor union. He claims his em-

ployees continuously crossed the picket line to perform their regular work.

It is alleged the unions' pickets have carried placards stating "Henry Langrehr, General Contractor, is maintaining substandard wages and conditions." It is plaintiff's claim the unions are deliberately creating a false impression that a strike is in progress at the site. He urges the placards falsely imply the picket is merely informational.

It is claimed one of plaintiff's subcontractors was once prevented from delivering concrete to the site. Jack Matheson, an individually named defendant, allegedly went to the subcontractor and advised him his employee union members were not to cross the picket line which they thereafter refused to do.

Plaintiff alleges there is no labor dispute between him and his employees and that the unions' sole purpose in picketing his construction site is to coerce him to compel his employees to join unions. He claims the unions, in violation of § 736B.1, The Code, have interfered with construction work in order to organize his employees.

Plaintiff claims his business is not involved in interstate commerce, is carried on solely within Iowa, and has not made purchases outside Iowa in excess of $50,000 within the last year. He specifically alleges the National Labor Relations Board (NLRB) therefore has no jurisdiction.

■ The unions petitioned for removal of the cause to federal district court, contending that, since plaintiff alleged a picketing dispute by labor unions, the controversy is one which falls within the unfair labor practices defined by 29 U.S.C.A. § 158(a) and 29 U.S.C.A. § 158(b). It was claimed this placed the controversy within the exclusive jurisdiction of federal court. We note parenthetically such a petition for removal is not a general appearance. See *Johannsen v. Mid-Continent Pet. Corp.,* 227 Iowa 712, 288 N.W. 911 (1939).

The federal district court sustained plaintiff's subsequent motion to remand the case back to the trial court. In his ruling Judge Stuart stated:

"It appears to this Court, that the Clinton County District Court does not possess requisite jurisdiction in this matter. * * *. The federal government has preempted, generally the area involving unfair labor practices under 29 U.S.C. 158. * * *. Exceptions to this rule come when a state has an overriding interest in the labor dispute because of criminal or tort actions, or because of violence. No such claim is made here. It would further appear, then, that the Iowa state courts are without jurisdiction to enjoin such alleged unfair labor practices. * * *."

Following return of the case to the trial court the unions filed a special appearance. It pointed out plaintiff's petition did not claim criminal or tortious acts, or acts of violence so as to invoke the overruling interest of the State of Iowa as a matter of police power. The special appearance asserted no state court has jurisdiction because exclusive jurisdiction lies within the National Labor Relations Board where plaintiff has an adequate remedy.

We have no record or transcript of any evidentiary hearing in connection with the submission of the special appearance. The special appearance was summarily overruled and the unions appeal.

I. At the heart of all other issues in this controversy is the unions' claim state courts have no jurisdiction in matters of this kind. The petition alleges a typical labor dispute. With two exceptions, to be mentioned later, the National Labor Relations Board, under an act of the federal Congress, has preempted jurisdiction in such disputes.

" * * * In enacting the National Labor Relations Act and later the Labor Management Relations Act, 'Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and

application of its rules to a specific and specially constituted tribunal * * *.' *Garner v. Teamsters, etc., Union,* 1953, 346 U.S. 485, 490–491, 74 S.Ct. 161, 165–166, 98 L.Ed. 228[, 239–240]. Consequently, as a general rule, neither state nor federal courts have jurisdiction over suits directly involving 'activity [which] is arguably subject to § 7 or § 8 of the Act.' * * *." *Smith v. Local No. 25, Sheet Metal Workers Int. Ass'n,* 500 F.2d 741, 745 (5 Cir. 1974), quoting from *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775, 783 (1959). See also *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); 51A C.J.S. Labor Relations § 525, pp. 584–585.

This is not to imply the acts of Congress automatically strip the state of any and all jurisdiction in matters relating to labor disputes. The United States Supreme Court observed:

"We realize that it is not easy for a *state court to decide,* merely on the basis of a complaint and answer, *whether the subject matter is the concern exclusively of the federal Board* and withdrawn from the State. * * * [W]here [a party] alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, * * the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance." (Emphasis added.) *Weber v. Anheuser-Busch,* 348 U.S. 468, 481, 75 S.Ct. 480, 488, 99 L.Ed. 546, 558 (1955).

Certain cases thus seem left for state court jurisdiction. Defining them the Kansas Supreme Court observed:

"Although it is true that where the questionable labor conduct regulated by state law is also an unfair labor practice under federal law the doctrine of preemption excludes state action, state courts need not presume jurisdiction is preempted merely because the question is raised by a party to the dispute. In order for there to be a preemption of state court jurisdiction, it is necessary that it be shown (1) that the employer is engaged in interstate commerce or that his business operations substantially affect interstate commerce and (2) that the challenged activities expressly or arguably constitute either a protected activity or an unfair labor practice under the act. (Authorities)." *Continental Slip F. Bldrs. v. Brotherhood of C. & G. L.,* 195 Kan. 572, 573, 408 P.2d 620, 622 (1965). See also *Park Inn Hotel, Inc. v. Messing,* 31 Misc.2d 961, 224 N.Y.S.2d 179 (1962).

▮ Two areas for state jurisdiction remain. The first is where tortious or unlawful acts calling for the exercise of police power are claimed. Plaintiff's petition did not allege such acts. The second is where the employer is clearly not engaged in interstate commerce and it cannot be said his business operations substantially affect interstate commerce. Plaintiff claims, in resisting the special appearance, to fall under the second exception. Plaintiff claims he is not engaged in interstate commerce and that his business operations do not substantially affect the same.

II. The question becomes whether the trial court could claim jurisdiction on the ground plaintiff's business does not arguably affect interstate commerce. Under 29 U.S.C.A. § 152(7): "The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." In *Guss v. Utah L.R.B.,* 353 U.S. 1, 3–4, 77 S.Ct. 598, 599, 1 L.Ed.2d 601, 603 (1957) the term was defined as follows:

"* * * By * * * the definition of 'affecting commerce' * * *, Congress meant to reach to the full extent of its power under the Commerce Clause. (Authority). The Board, however, has never exercised the full measure of its jurisdiction. * * *. In 1950, concluding that 'experience warrants the establishment and

announcement of certain standards' to govern the exercise of its jurisdiction, (Authority), the Board published standards, largely in terms of yearly dollar amounts of interstate inflow and outflow. * * *."

The NLRB's policy instigating minimal dollar standards was officially adopted by Congress when it enacted 29 U.S.C.A. § 164(c)(1). State courts are no longer barred from asserting jurisdiction over labor disputes where " * * * the Board declines, pursuant to [29 U.S.C.A. § 164(c)(1)], to assert jurisdiction." 29 U.S.C.A. § 164(c)(2).

■ It is well settled that building construction may constitute interstate commerce as defined in the act. See 48 Am. Jur.2d, Labor and Labor Relations, § 404, p. 295. See also Annot., 8 A.L.R.2d 738, 740–742 (1949).

■ The appropriate standard under these authorities, in determining whether the NLRB will assert jurisdiction over this plaintiff, is whether he had $50,000 of interstate inflow or outflow, directly or indirectly. The computation is based on his nonretail business status. See *Siemons Mailing Service*, 122 NLRB 81, 85 quoted in *Continental Slip F. Bldrs.*, supra, 195 Kan. at 574–575, 408 P.2d at 623. See also 48 Am. Jur.2d, Labor and Labor Relations, § 432, p. 315. In determining whether the $50,000 limitation has been reached the computation is based on the employer's over-all operation. See *Paul W. Speer, Inc.*, 94 NLRB 317, 318 quoted in *Continental Slip F. Bldrs.*, *Id.* See also 48 Am.Jur.2d, Labor and Labor Relations, § 433, p. 317.

■ The $50,000 jurisdictional amount may be satisfied in secondary boycott disputes by combining business volume or out-of-state purchases of the primary employer and secondary employer at the location affected by the secondary boycott. See 48 Am.Jur.2d, Labor and Labor Relations, § 437, p. 319. See also *Hattiesburg Bldg. & Trades Council v. Broome*, 377 U.S. 126, 84 S.Ct. 1156, 12 L.Ed.2d 172 (1964); Annot.,

supra, 8 A.L.R.2d at 742; 51A C.J.S. Labor Relations § 523, p. 579.

Under plaintiff's allegation one of the members of a defendant union went to plaintiff's subcontractor and told the subcontractor none of the union truck drivers were to deliver to plaintiff. This arguably would constitute a secondary boycott and would be an unfair labor practice under 29 U.S.C.A. § 158(b)(4).

The record however does not yield facts to which the foregoing legal principles can be applied. Plaintiff's petition asserts his business is carried on within this state and claims plaintiff "has not made purchases without the State of Iowa in excess of $50,000.00 within the last year past." The unions did not assert plaintiff was "affecting commerce" and made no allegation as to the dollar amount of his interstate business. The unions attached no affidavits to their special appearance, but attached only the remand order from federal court. We have no record of any hearing conducted upon submission of the special appearance.

■ III. Finally we are faced with the question of whether plaintiff or the unions must suffer from the lack of record. There is no way we can find the $50,000 standard has been met. We believe it was plaintiff's responsibility to show he fell into the exception and thereby was exempt from exclusive NLRB jurisdiction.

■ On this record it was error for the trial court to overrule the special appearance. The error might have been averted and the questions certainly could have been more readily considered by the trial court and by us had there been an evidentiary hearing. We note and approve the following:

"We feel that the proper procedure is for the state trial court, upon the filing of a motion to dismiss the proceeding for want of jurisdiction, to conduct a full-scale hearing upon the jurisdictional issue. If, upon consideration of the proof presented at that hearing, the trial court finds that the case is

not one of which the N.L.R.B. would take jurisdiction (as, for example, if the proof showed that the value of the inflow and outflow in interstate commerce is less than $50,000), then the trial court should retain jurisdiction and proceed with the determination of the case. On the other hand, if the trial court finds that the case is one that falls within the jurisdiction of the N.L.R.B., or if the court finds that the question of jurisdiction is so close that the case is arguably within the jurisdiction of the N.L.R.B., then the court should dismiss the proceeding, remitting the losing party to its remedy by appeal to this court or by application to the N.L.R.B." *Mitcham v. Ark-La Construction Company,* 239 Ark. 1162, 397 S.W.2d 789, 796 (1965).

Ultimately the disposition of this appeal is controlled by the posture of the case as an appeal from a ruling on a special appearance.

" * * * [W]hen a defendant, by special appearance, makes a direct attack upon the jurisdiction of a court the burden is on plaintiff to sustain the requisite jurisdiction, but once a prima facie showing has been made by him the burden of going forward with the evidence is upon defendant to overcome or rebut, if possible, such prima facie case. (Authorities)." *Tice v. Wilmington Chemical Corp.,* 259 Iowa 27, 47, 141 N.W.2d 616, 143 N.W.2d 86, 86–87 (1966). See also *Jansen v. Harmon,* 164 N.W.2d 323, 326 (Iowa 1969).

The obligation of a plaintiff to sustain the requisite jurisdiction upon such a challenge overrides the rule we initially assume the truth of material allegations of a petition under *Snakenburg v. Jason Mfg., Inc.,* supra. We also note plaintiff failed to allege his interstate volume, combined with his secondary employers, did not exceed $50,000.

Here the unions were never put to the burden of going forward with the evidence because plaintiff did not discharge his initial burden of sustaining requisite jurisdiction with regard to the $50,000 standard.

The judgment of the trial court must be and is reversed.

Reversed.