Joseph B. WALLES, Appellant,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AF OF L–CIO, et al., Appellees.

v.

BECHTEL CORPORATION, Appellant,

v.

Joseph B. WALLES, Appellee.

No. 57586.

Supreme Court of Iowa.

April 20, 1977.

James W. Crawford and Gerald T. Sullivan, Cedar Rapids, and Edwin Vieira, Jr., Silver Spring, Md., for appellant Joseph B. Walles and appellee Joseph B. Walles.

Patrick M. Roby and Robert R. Rush, Shuttleworth & Ingersoll, Cedar Rapids, for appellant Bechtel Corp.

Robert E. Conley, Des Moines, for appellee International Broth. of Elec. Workers, AF of L–CIO.

Joseph E. Day, Cedar Rapids, for appellee International Broth. of Elec. Workers, AF of L–CIO, Local 405.

Raymond W. Conley, Des Moines, for appellee International Broth. of Elec. Workers, AF of L–CIO, Local 716.

Heard before MOORE, C. J., and MASON, REYNOLDSON, HARRIS and McCORMICK, JJ.

MASON, Justice.

The question presented in this matter is whether plaintiff Joseph B. Walles can maintain his lawsuit in the Iowa district court. It comes to us by way of appeal from the trial court's rulings on various special appearances.

Defendant, International Brotherhood of Electrical Workers, AF of L–CIO (hereinafter referred to as International), is an association of local labor organizations and individuals residing in various places including Linn County, Iowa. Defendant, International Brotherhood of Electrical Workers, AF of L–CIO, Local 405 (Local 405), is a labor organization comprised of individuals residing in various places including Linn County, Iowa, with its principal office located in Cedar Rapids, Linn County. Defendant, International Brotherhood of Electrical Workers, AF of L–CIO, Local 716 (Local 716), is a labor organization comprised of individuals residing in various places in the United States with its principal office in Houston, Texas. Defendant, Bechtel Corporation (Bechtel), is a foreign corporation authorized to do business in the state of Iowa and actually engaged in construction business in Linn County. Local 405 and Local 716 are local labor organizations which are part of, and are controlled by, International in their relations with members. Plaintiff at all times material hereto was a member of International through his affiliation with Local 716.

In September of 1971 plaintiff, an electrician, presented to an agent of Local 405 a letter of introduction and employment recommendation from Local 716. As a result, plaintiff obtained employment by Bechtel on a construction site near Palo, Iowa. April 3, 1972, plaintiff was discharged. He maintains his discharge was pursuant to an alleged agreement or understanding between Bechtel and Local 405 that union membership was necessary for employment as an electrician on the construction site.

During employment by Bechtel plaintiff regularly paid assessments to Local 405 but became in arrears in dues payment to Local 716. Before being discharged by Bechtel plaintiff attempted to pay the arrears in dues to Local 716 but payment was refused by its authorized agents. Local 716 advised the authorized agent or agents of Local 405 of plaintiff's status who in turn notified Bechtel.

March 29, 1974, Walles commenced an action at law against Bechtel, International, Local 405 and Local 716. No other parties or individuals were named in the suit.

After identifying the parties to the lawsuit and describing the circumstances lead-

ing to his employment and subsequent discharge by Bechtel, plaintiff alleged as a claim for relief that an agreement or understanding existed between Bechtel and Local 405 that union membership was necessary for employment as an electrician on the construction site in Palo; that the concerted activities of defendants resulted in his wrongful discharge from employment with Bechtel for the status of plaintiff's union membership; and that said actions constituted violations of section 736A(1)(2)(3) and (4), The Code. In division 1 plaintiff prays for compensatory damages in the amount of $100,000 and in division 2 seeks damages in the amount of $150,000. He did not seek injunctive relief.

Proper service of original notice was made on Bechtel. Service on Local 405 was made by delivery of the original notice to the vice-president of Local 405. Original notices to the International and Local 716 were filed with the secretary of state and notifications of filing were forwarded by certified mail to the defendants and to the officers of the International and Local 716. The record is clear and no one disputes that these notifications were received.

Special appearances were filed by all defendants. Bechtel's special appearance stated that (1) Mr. Walles' allegations, if true, violated sections 7 and 8 of the National Labor Relations Act; (2) Mr. Walles failed to allege that the National Labor Relations Board or any other federal agency had refused jurisdiction of his claim; and (3) that because the subject matter of the suit could constitute a violation of the National Labor Relations Act, the state court lacked jurisdiction over this defendant. The trial court overruled the special appearance finding that the preemption doctrine did not apply in this case. Bechtel sought and obtained leave to present its interlocutory appeal from the trial court's overruling of its special appearance.

The written ground in the special appearance of Local 405 was that federal law preempted the state courts from jurisdiction over the subject matter of the suit. The written grounds in the special appear-

ance of Local 716 were: (1) service of an unincorporated association cannot be made under section 617.3, The Code, 1971, (2) defendant's lack of minimum contacts, and (3) federal preemption. The written grounds in the special appearance of the International were: (1) the International by allegation of the petition did not qualify as a nonresident and thus could not be served under section 617.3, The Code, 1971, (2) the International cannot be sued in its own name, and (3) federal preemption.

Plaintiff resisted the special appearances. The trial court ruled against defendants on the preemption issue relying upon *Retail Clerks Int. Ass'n L. 1625 v. Schermerhorn,* 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179. However, the special appearance of each labor organization was sustained on the basis of plaintiff's failure to name individual defendants in addition to defendant labor organizations relying upon *Boyer v. Iowa High School Athletic Assn.,* 258 Iowa 285, 287–288, 138 N.W.2d 914, 915. All other grounds asserted by the various defendants were rejected by the court. Plaintiff appeals from these decisions.

The International, Local 405 and Local 716 have cross appealed.

The following issues are presented for this court's review by the parties designated:

(1) Do preemption concepts prohibit a state court from exercising jurisdiction over plaintiff's claim for relief? (All parties).

(2) Can grounds asserted in the special appearance of one defendant inure to the benefit of other similarly situated defendants? (Plaintiff, Local 405 and Local 716).

(3) Is there a failure to obtain jurisdiction over an unincorporated labor union by reason of the fact that individual members or officers were not named as additional party defendants? (All parties except Bechtel).

(4) Is International beyond the reach of section 617.3, The Code, in light of the fact some of its members are residents of Iowa? (Plaintiff and International).

(5) Is section 617.3, The Code, available to secure jurisdiction over a foreign unincorporated association? (Plaintiff, Local 716 and International).

■ I. In ruling on a special appearance this court accepts as true the allegations of the petition. Plaintiff has the burden of sustaining jurisdiction, but once a prima facie case has been demonstrated the burden of going forward with the evidence to rebut or overcome the prima facie showing is upon defendant. This court's review is not de novo, and consequently, the trial court's findings of fact are binding upon us if supported by substantial evidence. In addition, the evidence is viewed in the light most favorable to those findings. *Douglas Mach. & Eng. v. Hyflow Blanking Press*, 229 N.W.2d 784, 787–788 (Iowa 1975); *Creative Commun. Consult. v. Byers Transp.*, 229 N.W.2d 266, 268–269 (Iowa 1975).

The theme common to the special appearances of all defendants in this matter is the contention the Linn District Court lacked jurisdiction to consider the subject matter of plaintiff's petition since the allegations of the petition, if proven, would charge an unfair labor practice prohibited by section 8 of the National Labor Relations Act, 29 U.S.C.A. section 158, and committed to the exclusive jurisdiction of the National Labor Relations Board (NLRB) by section 10(a), 29 U.S.C.A. section 160(a).

Specifically, defendants argue plaintiff alleges the maintenance of a "closed shop" pursuant to the alleged agreement which is clearly violative of sections 8(a)(1) and 8(a)(3) of the NLRA, 29 U.S.C.A. section 158(a)(1) and (3).

■ Under the principle of law stated earlier in this division plaintiff has the burden of alleging sufficient facts to demonstrate a prima facie case of subject matter jurisdiction.

■ Ordinarily, plaintiff is aided by a presumption that a court of general jurisdiction has jurisdiction over a particular controversy unless a showing is made to the contrary.

■ In this state the district court is a court of general jurisdiction. Section 602.1, The Code, provides:

"There shall be a unified trial court in the state of Iowa, known as 'Iowa District Court'. The Iowa district court shall have exclusive, general and original jurisdiction of all actions, proceedings, and remedies, civil, criminal, probate, and juvenile, *except in cases where exclusive or concurrent jurisdiction is conferred upon some other court, tribunal, or administrative body, and it shall have and exercise all the power usually possessed and exercised by trial courts of general jurisdiction* and shall be a court of record." (Emphasis supplied).

■ In light of the emphasized portion of this statute plaintiff would not be aided by the presumption just mentioned in demonstrating existence of a prima facie case as to the subject matter jurisdiction if, as defendants argue, the NLRB has exclusive jurisdiction of the subject matter of plaintiff's petition.

■ Plaintiff responds to defendants' contention by maintaining his petition charges existence of a "union shop" agreement. This type of agreement, allowed by the first proviso of section 8(a)(3) of the NLRA, 29 U.S.C.A. section 158(a)(3), is subject to a state's right to ban such an agreement. Section 14(b), 29 U.S.C.A. section 164(b), provides:

"Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law."

■ This statute enables a state to enact a "right-to-work" law, such as chapter 736A, The Code, prohibiting union or agency shops which are permitted by the NLRA. *Oil, Chemical & Atomic Workers, Etc. v. Mobil Oil*, 426 U.S. 407, 96 S.Ct. 2140, 2142, 48 L.Ed.2d 736; *Ficek v. International Bro. of Boilermakers, Etc.*, 219 N.W.2d 860, 865 (N.D.1974); *Moore v. Local No. 10, Plumbers & Steamfitters U.*, 211 Va. 520,

179 S.E.2d 15, 18. In addition, under the Supreme Court's holding in *Schermerhorn, supra,* where a state has exercised its section 14(b) power and enacted a right-to-work law, its courts, rather than the NLRB alone, have jurisdiction to enforce that law. 375 U.S. at 102–103, 84 S.Ct. at 222, 11 L.Ed.2d at 184. See also *Ficek, supra,* 219 N.W.2d at 865.

Iowa's policy regarding the regulation of compulsory-unionism arrangements is embodied in the following sections of the Code:

"736A.3 *Contracts to exclude unlawful.* It shall be unlawful for any person, firm, association, corporation or labor organization to enter. into any understanding, contract, or agreement, whether written or oral, to exclude from employment members of a labor union, organization or association, or persons who do not belong to, or who refuse to join, a labor union, organization or association, or because of resignation or withdrawal therefrom."

"736A.4 *Union dues as a prerequisite to employment—prohibited.* It shall be unlawful for any person, firm, or association, labor organization or corporation, or political subdivision, either directly or indirectly, or in any manner or by any means as a prerequisite to or a condition of employment to require any person to pay dues, charges, fees, contributions, fines or assessments to any labor union, labor association or labor organization."

██ If plaintiff's allegation is that defendants maintained a "closed shop" agreement, the NLRB has exclusive jurisdiction to deal with plaintiff's claim. On the other hand, if plaintiff's claim is based upon the alleged existence of a "union shop" or some other less onerous union security agreement, a state court has jurisdiction to hear plaintiff's claim for relief based upon alleged violations of a right-to-work law.

Plaintiff's allegations as to the type of agreement entered into by defendants are as follows:

" * * *

"4. * * * ; that an agreement or understanding existed between said Bechtel Corporation and Local 405 that union membership was necessary for employment as an electrician on the construction site * *.

"5. That the actions on the part of Local 405, Local 716, and therefore the International, separately and in combination with each other and in combination with the actions of Defendant Bechtel Corporation, caused the dismissal of the Plaintiff purely for the status of his union membership; * * * an agreement or understanding, * * * to exclude from employment electricians who have not current union status in the International; * * * they have required the Plaintiff as a condition of employment, to pay dues, charges, fees, contributions, and fines or assessments to a labor organization; that, pursuant to said condition, Defendants have jointly and severally * * * denied to the Plaintiff continued employment with Defendant Bechtel Corporation; * * *."

This statement from *Higgins v. Cardinal Manufacturing Company,* 188 Kan. 11, 360 P.2d 456, 461, is relevant:

" * * * In the evolution of Federal American Law three types of union-security provisions in collective bargaining agreements have commanded attention: (a) The *closed shop* provision requires membership in the contracting union before a job applicant can be employed and for the duration of his employment; (b) the *union shop* provision does not require an applicant to be a member of the union before he is hired, but it does require him to join, and usually to continue his membership in the union after he is hired; and (c) the *agency shop* * * [not of concern herein]." (Emphasis in original).

*Oil, Chemical & Atomic Workers, Etc. v. Mobil Oil,* 426 U.S. at 409, 96 S.Ct. at 2142, 48 L.Ed.2d at 739, n. 1, has this statement:

"A 'union shop' agreement provides that no one will be employed who does not join the union within a short time after being hired. An 'agency shop' agreement generally provides that while employees do not

have to join the union, they are required—usually after 30 days—to pay the union a sum equal to the union initiation fee and are obligated as well to make periodic payments to the union equal to the union dues. See *NLRB v. General Motors,* 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963). The 'union shop' and 'agency shop' varieties of 'union security' agreements are to be distinguished from the 'closed shop' agreement, barred by § 8(a)(3), which provides that the employer will hire no one who is not a member of the union at the time of hiring."

In addition to the definitional statements from *Oil, Chemical & Atomic Workers, supra,* the following statements are instructive:

" * * * A closed shop is one where only union members may be hired. A union shop is one where the employer is allowed to hire non-union men but they must join the union within a limited number of days, usually 30 days. * * *." *Minor v. Building and Construction Trades Council,* 75 N.W.2d 139, 147 (N.D.1956).

"A closed-shop contract is one which requires union membership as a condition of hiring and of continued employment. * * Not only are discharges under a closed-shop contract unlawful under the amended Act * * *, but the mere execution of such a contract is, in itself, a violation of the Act * * *. No evidence of discrimination under the contract is necessary to establish the violation. Informal closed-shop arrangements * * *, as well as either oral or written agreements * * *, are unlawful. Union rules concerning preferential or exclusive hiring of union members may be evidence of closed-shop conditions * * *." CCH Labor Law Reporter, Labor Relations, Vol. 3, paragraph 4520, page 9515.

"A union-shop contract is one which requires union membership as a condition of retaining employment * * *. Union membership is not required as a condition of hiring; however, employees must join the union within a specified time after they are hired or after execution of the contract. * * *." *Id.*

"A closed-shop provision * * * requires that all employees be members of the union when hired and remain members in good standing during their period of employment. In its simplest form, a typical closed-shop clause reads as follows:

" 'The employer shall employ none but members in good standing in the union. All employees shall remain members in good standing as a condition of continued employment.' " CCH Labor Law Reporter, Labor Relations, Vol. 3, paragraph 4520.01, page 9519.

Where the facts alleged in a petition seeking relief for an unfair labor practice reasonably bring the controversy within the sections of the NLRA prohibiting such activity the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issue in the first instance. *Langrehr v. United Bro. of Carpenters, Etc.,* 236 N.W.2d 339, 342 (Iowa 1975), citing authorities. The allegations in paragraph 4 of the petition reasonably charge that a "closed shop" agreement existed between Bechtel and Local 405.

II. Plaintiff in argument maintains even if it be determined that the allegations of his petition do charge a "closed shop" agreement between Bechtel and the union, section 14(b) permits the state to ban the "closed shop" as well as the "union shop."

Plaintiff insists the doctrine of federal preemption does not apply where a state court enforces a valid state right-to-work law such as chapter 736A, The Code.

This argument presents the question whether the preemption doctrine applies to the type of dispute involved in the case before us.

In discussing the doctrine of preemption in the labor field the Court in *San Diego Building Trades Council, Etc. v. Garmon,* 359 U.S. 236, 241–244, 79 S.Ct. 773, 778–779, 3 L.Ed.2d 775, made this statement:

"In determining the extent to which state regulation must yield to subordinating federal authority, we have been concerned

with delimiting areas of potential conflict; potential conflict of rules of law, of remedy, and of administration. \* \* \* Congress has entrusted administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience:

" 'Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies. \* \* \* A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law. \* \* \* ' *Garner v. Teamsters, etc. Union,* 346 U.S. 485, 490–491, 74 S.Ct. 161, 165, 98 L.Ed. 228.

" \* \* \*

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes."

In *Amalgamated Ass'n of St., E. R. & M. C. Emp. v. Lockridge,* 403 U.S. 274, 276, 91 S.Ct. 1909, 1913, 29 L.Ed.2d 473, 477, the Court had occasion to discuss further the doctrine of preemption in the labor field when it said:

"*San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), established the general principle that the National Labor Relations Act pre-empts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the Act. That decision represents the watershed in this Court's continuing effort to mark the extent to which the maintenance of a general federal law of labor relations combined with a centralized administrative agency to implement its provisions necessarily supplants the operation of the more traditional legal processes in this field."

The following statement appears later in the opinion, 403 U.S. at 288, 91 S.Ct. at 1918, 29 L.Ed.2d at 483:

"The rationale for pre-emption, then, rests in large measure upon our determination that when it set down a federal labor policy Congress plainly meant to do more than simply to alter the then-prevailing substantive law. It sought as well to restructure fundamentally the processes for effectuating that policy, deliberately placing the responsibility for applying and developing this comprehensive legal system in the hands of an expert administrative body rather than the federalized judicial system."

In conclusion the Court had this to say:

" \* \* ' \* While we do not assert that the *Garmon* doctrine is without imperfection, we do think that it is founded on reasoned principle and that until it is altered by congressional action or by judicial insights that are born of further experience with it, a heavy burden rests upon those who would, at this late date, ask this Court to abandon *Garmon* and set out again in quest of a system more nearly perfect."

403 U.S. at 302, 91 S.Ct. at 1925–1926, 29 L.Ed.2d at 492.

Both *Garmon* and *Lockridge* are cited with approval by this court in *Langrehr v. United Bro. of Carpenters, Etc.,* 236 N.W.2d at 342. Among other cases which have considered the doctrine of preemption in the labor field are: *International Ass'n of Machinists v. Gonzales,* 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018; *Local 100 of United Ass'n of Jour. & App. v. Borden,* 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638; *Local No. 207, Int. Ass'n of Bridge, Etc. v. Perko,* 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed.2d 646; *N.L.R.B. v. General Motors Corporation,* 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670; *Retail Clerks Int. Ass'n, L. 1625 v. Schermerhorn,* 373 U.S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678 (*Schermerhorn I*); *Retail Clerks Int. Ass'n, L. 1625 v. Schermerhorn,* 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179 (*Schermerhorn II*).

In *Dugdale Constr. Co. v. Operative etc. Assn.,* 257 Iowa 997, 135 N.W.2d 656, this court dealt with the doctrine of preemption in the labor field and cited, among other authorities, the *Garmon* decision.

In *Langrehr,* 236 N.W.2d at 343, this court said, "It is well settled that building construction may constitute interstate commerce as defined in the act. * * * [citing authority]."

It is settled beyond argument that a "closed shop" variety of union-security agreement is "outlawed" and prohibited by section 8(a)(3) of the NLRA, 29 U.S.C.A. section 158(a)(3). Jurisdiction of controversies arising from activities in connection with such agreements is in the exclusive jurisdiction of the NLRB, section 10(a) NLRA, 29 U.S.C.A. section 160(a).

Where the questionable labor conduct regulated by state law such as chapter 736A, The Code, is also an unfair labor practice under federal law the doctrine of preemption excludes state action. *Langrehr v. United Bro. of Carpenters, Etc.,* 236 N.W.2d at 342; *Farmer v. United Bro. of Carpenters, Etc.,* —— U.S. ——, 97 S.Ct. 1056, 51 L.Ed.2d 338.

However, the police power of the state is not displaced by the NLRA when a state has an overriding interest in the labor dispute because of criminal or tort actions, or because of violence. See *Langrehr,* 236 N.W.2d at 341.

We hold neither this court nor the district court has jurisdiction over the subject matter of plaintiff's claim by reason of the doctrine of preemption. Hence, he cannot maintain his lawsuit in the Iowa district court.

III. As pointed out, the question of subject matter jurisdiction was raised in the special appearances of each of the defendants in this lawsuit. Want of jurisdiction of the subject matter may be taken advantage of at any stage of the proceedings. It cannot be conferred by waiver, estoppel or consent.

"Every court has inherent power to determine whether it has jurisdiction over the subject matter of the proceedings before it. It makes no difference how the question comes to its attention. Once raised, the question must be disposed of, no matter in what manner of form or stage presented. The court on its own motion will examine grounds of its jurisdiction before proceeding further." *Carmichael v. Iowa State Highway Commission,* 156 N.W.2d 332, 340 (Iowa 1968). See also *Lynch v. Uhlenhopp,* 248 Iowa 68, 80, 78 N.W.2d 491, 498.

Error in the trial court's overruling of Bechtel's special appearance requires reversal on its appeal.

As noted, the court sustained the special appearances of defendant labor organizations on grounds other than lack of subject matter jurisdiction. Once the question was raised by the special appearances of these defendants the matter should have been disposed of on that basis. See *Lloyd v. State,* 251 N.W.2d 551 (Iowa 1977). The court in those instances reached the right result for the wrong reason and is therefore affirmed on plaintiff's appeal from the adverse rulings of the court in regard to the labor organization defendants.

In view of our conclusions expressed herein we need not reach other issues presented by these appeals.

The case is therefore

Reversed on Bechtel's appeal and affirmed on plaintiff's appeal.