John A. BROWN, Appellant,

v.

Leroy GARMAN, Defendant,

and

John R. Baker, Appellee.

No. 84–375.

Supreme Court of Iowa.

March 20, 1985.

Thomas S. Mann, Jr., Des Moines, for appellant.

Charles E. Gribble and Becky S. Knutson of Sayre & Gribble, P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and McGIVERIN, SCHULTZ, CARTER and WOLLE, JJ.

WOLLE, Justice.

This interlocutory appeal presents the threshold jurisdictional question whether federal labor relations laws preempt damage claims asserted by a union member against union officials for (1) intentional infliction of emotional distress, and (2) intentional interference with contractual relations and employment opportunities. The district court dismissed both claims on the ground that the preemption doctrine deprives the state court of jurisdiction to decide them. We conclude that federal law preempts only the claim of interference with contractual and employment opportunities, not the claim for intentional infliction of emotional distress. We therefore affirm in part, reverse in part, and remand for further proceedings.

I. *The Pleaded Facts.*

The pleadings disclose a long-standing conflict involving a union, two of its officers, and its only black member. Local No. 55 of the International Brotherhood of Electrical Workers (the union) bargains collectively with employers to secure agreements on behalf of its members concerning wages, working conditions, and terms of employment. Because the internal regulations of the union specify that it shall serve as "the sole and exclusive source of referral of applicants for employment," members may not independently solicit jobs. Instead, unemployed members seeking employment must register with the union each

month, and the union then refers them to available jobs based on their position on the referral list. Defendant John R. Baker (Baker) was the business manager of the union, and defendant Leroy Garman (Garman) its assistant business manager and executive board chairman, during all times pertinent to this case.

Plaintiff John A. Brown (Brown), the sole black member of the local union, brought this action to recover damages from Baker and Garman. Brown's petition alleges that he initially lost his job as an electrician in February of 1982 and immediately sought assistance from the union in securing new employment. He contends that he was not advised of the required referral procedure until September of 1982, even though he regularly visited union headquarters, and that after he registered he was still not referred to jobs. After discovering that Garman had referred himself to a job without first placing himself on the referral list, Brown requested and obtained permission to review the union records. He alleges that those records revealed that between November of 1982 and May of 1983 union officials passed over him more than 34 times, impermissibly referring not Brown but other individuals who had either registered after Brown or had entirely failed to register.

Brown initially filed a formal complaint with the union alleging violations of union rules and procedures. A union appeals committee heard the matter and determined that union officials had discriminated against Brown in implementing the referral system. The appeals committee awarded him $4000 as well as the right to secure a referral to the first appropriate job. Brown subsequently initiated a proceeding against the union before the Iowa Civil Rights Commission. The union agreed to pay Brown $6000 in settlement of that civil rights claim in return for dismissal with prejudice of the complaint filed with the agency and execution of a release. The release expressly left open recourse against union officials.

Brown then filed his three-count petition in district court seeking to recover damages from Baker and Garman. His first count alleged that Garman and Baker racially discriminated against him by denying him the right to enforce his contractual relationship with the union, in violation of 42 U.S.C. section 1981. Neither defendant has requested interlocutory review of the district court's refusal to dismiss that count, so we are not here concerned with the section 1981 claim.

The second count of Brown's petition alleged that the defendants had intentionally interfered with his contractual relationship with the union and prospective employment opportunities, and the third count alleged intentional infliction of mental and emotional distress. Although defendant Garman merely answered without challenging the court's jurisdiction, defendant Baker by motion to dismiss contended that the state causes of action were preempted by the National Labor Relations Act and also that a separate federal labor statute, section 301 of the Labor-Management Relations Act, exempted union officials from damage suits arising out of collective bargaining agreements. Although the district court ruled against Baker on his section 301 defense, it granted Baker's motion to dismiss the second and third counts on the preemption ground.

Preemption is a jurisdictional issue concerning the power of the state court to decide certain issues. It may be raised at any time and may but need not be raised by a special appearance. Iowa R.Civ.P. 104(a). The question was submitted to the district court at the time of the hearing on Baker's motion to dismiss, without an evidentiary hearing. We accept as true the well-pleaded allegations of Brown's petition, read in the light most favorable to him. The burden of sustaining jurisdiction is upon the plaintiff, but once the well-pleaded facts establish a prima facie jurisdictional basis for the plaintiff's claims, the burden shifts and the defendant may offer evidence to overcome that prima facie showing. *See Walles v. International*

*Brotherhood of Electrical Workers*, 252 N.W.2d 701, 708 (Iowa 1977) (district court should have declined jurisdiction because pleaded facts established that claim was preempted by federal labor law); *Langrehr v. United Brotherhood of Carpenters, Local 772*, 236 N.W.2d 339, 343–44 (Iowa 1975) (plaintiff failed to meet burden of proving facts supporting exception to preemption doctrine).

This case, like other Iowa cases deciding similar preemption questions, turns less on disputed facts than on the legal consequences of the allegations of plaintiff's petition. *See, e.g., Hollander v. Peck*, 261 N.W.2d 507, 510 (Iowa 1978) (petition for damages stated arguable unfair labor practice and therefore was preempted by federal law); *Dugdale Construction Co. v. Operative Plasterers & Cement Masons International Association*, 257 Iowa 997, 1001–03, 135 N.W.2d 656, 659–60 (1965) (pleadings showed injunction action preempted but contract action not preempted).

II. *Application of Preemption—The Rule and its Exceptions.*

■ Preemption in the labor law arena is often referred to as the *Garmon* preemption doctrine because it was first authoritatively defined in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). There, the United States Supreme Court set aside a state court injunction and damage award which an employer had obtained against picketing unions, holding:

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that State jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law.

*Id.* at 244, 79 S.Ct. at 779, 3 L.Ed.2d at 782. In *Amalgamated Association of Motor Coach Employees v. Lockridge*, 403 U.S. 274, 288, 91 S.Ct. 1909, 1918, 29 L.Ed.2d 473, 483 (1971), the first of many cases in which the Court has refined *Garmon* principles, the Court explained why the National Labor Relations Board ordinarily has primary jurisdiction over labor disputes:

> The rationale for preemption, then, rests in large measure upon our determination that when it set down a federal labor policy Congress plainly meant to do more than simply to alter the then-prevailing substantive law. It sought as well to restructure fundamentally the processes for effectuating that policy, deliberately placing the responsibility for applying and developing this comprehensive legal system in the hands of an expert administrative body rather than the federalized judicial system.

Consequently, state causes of action are presumptively preempted if they concern conduct that is actually or arguably prohibited or protected by the National Labor Relations Act. *Garmon*, 359 U.S. at 245, 79 S.Ct. at 779, 3 L.Ed.2d at 782. As federal and state courts since *Garmon* have shaped preemption, they have recognized that the general rule—deferral to the NLRB—is subject to important exceptions. *See, e.g., Belknap, Inc. v. Hale*, 463 U.S. 591, ——, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798, 816 (1983) (excepting from preemption state claim of strike replacements against employer based on misrepresentation and breach of promise); *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 200, 98 S.Ct. 1745, 1759, 56 L.Ed.2d 209, 227 (1978) (excepting from preemption employer's trespass action against picketers); *Hollander v. Peck*, 261 N.W.2d at 509–10 (discussing three exceptions and finding none applicable); *Bebensee v. Ross Pierce Electric Corp.*, 400 Mich. 233, 241–44, 253 N.W.2d 633, 637–39 (1977) (discussing several exceptions to preemption and citing numerous pertinent articles by commentators).

Baker urges us to apply the general preemption rule and uphold the district court's ruling that it lacked jurisdiction over Brown's second and third causes of action.

Baker argues that the district court could not decide either of those damage claims without frustrating national labor policy by infringing upon the statutory regulatory scheme which is the cornerstone of federal labor law.

Brown responds that the common-law claims which the district court dismissed fall squarely within a local-interest exception to preemption which *Garmon* recognized in stating that states may regulate "where the activity regulated was a merely peripheral concern" of federal labor law or "where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." 359 U.S. at 243–44, 79 S.Ct. at 779, 3 L.Ed.2d at 782. Brown relies on several recent decisions in which the United States Supreme Court has quoted that language from *Garmon* and applied that local-interest exception. We must separately determine how the rule of preemption and this local-interest exception apply to each of Brown's claims that the district court dismissed.

■ A. *Intentional Infliction of Emotional Distress.* One of the two claims that the district court dismissed alleged that Baker's actions, summarized above, "were malicious, without just cause or excuse, outrageous, and were committed with the intention of causing or recklessly disregarding the probability of causing plaintiff mental anguish and emotional distress," thereby causing Brown "permanent physical and emotional damages." In deciding the threshold jurisdictional question of preemption we read those allegations in the light most favorable to Brown and accept the pleaded facts as true. Those facts place this cause of action squarely within the local-interest exception to the preemption doctrine. The district court erred in sustaining the motion to dismiss the claim for intentional infliction of emotional harm.

The controlling case on this issue is *Farmer v. United Brotherhood of Carpenters, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). That case, like this one, involved a trade union which operated an exclusive hiring hall for referring union members to employers. There, as here, an employee brought an action for damages in state court against union officers, alleging that they had intentionally engaged in outrageous conduct by discriminating against him in referrals to employers and by personally abusing and harassing him when he complained about the hiring hall operation. The *Farmer* court, in a unanimous opinion rare in preemption cases, held the claim based on intentional infliction of emotional distress was outside the scope of exclusive federal protection and therefore not subject to preemption. The opinion explained why regulation of such conduct was of only peripheral federal concern, and conversely, of substantial concern to state interests:

> Regardless of whether the operation of the hiring hall was lawful or unlawful under federal statutes, there is no federal protection for conduct on the part of union officers which is so outrageous that "no reasonable man in a civilized society should be expected to endure it."
>
> . . . .
>
> The State, on the other hand, has a substantial interest in protecting its citizens from the kind of abuse of which [plaintiff] complained.

*Id.* at 300, 97 S.Ct. at 1064, 51 L.Ed.2d at 351. Baker has neither distinguished *Farmer* nor cited any other authority so similar to the circumstances of this case. *Farmer* is controlling on this issue, and the district court therefore should have denied Baker's motion to dismiss Brown's claim based on intentional infliction of emotional distress.

■ It is important to note that Iowa appellate courts in several recent cases have listed the elements of an intentional infliction of emotional distress claim and drawn lines between the type of conduct which is sufficiently outrageous to support such a claim and that which is not. *See, e.g., Bossuyt v. Osage Farmers National Bank*, 360 N.W.2d 769, 776–77 (Iowa 1985)

(bank's refusal to honor certified check not sufficiently outrageous); *Vinson v. Linn-Mar Community School District,* 360 N.W.2d 108, 118–20 (Iowa 1985) (employer's harrassment of employee not sufficiently outrageous; elements of tort listed and comparable cases analyzed); *Harsha v. State Savings Bank,* 346 N.W.2d 791, 801 (Iowa 1984) (banker's refusal to extend credit not sufficiently outrageous to support jury verdict); *Blong v. Snyder,* 361 N.W.2d 312, 315–17 (Iowa Ct.App.1984) (supervisors' excessive and groundless harrassment of employee sufficiently outrageous). *Randa v. U.S. Homes, Inc.,* 325 N.W.2d 905, 907–08 (Iowa Ct.App.1982) (defective construction of home and filing of mechanic's lien so shocking as to support jury verdict for emotional distress). Our case law demonstrates that Iowa has an interest in protecting from intentionally outrageous conduct the health and well-being of persons within its borders. If Brown proves, as he has pleaded, that Baker's actions were truly malicious, outrageous, and committed with the intention to cause him to suffer physical and emotional injuries, Brown may be entitled to recover damages based on the Iowa law governing such an intentional tort.

A caution, however, must accompany our remand of this claim for further proceedings in the district court. To constitute outrageous conduct which gives rise to a tort claim excepted from preemption, the tortfeasor's actions must involve more than will establish an unfair labor practice subject to the exclusive jurisdiction of the NLRB. In *Farmer,* for example, the Court found an exception to preemption in the pleaded claim, but nevertheless reversed the trial court's award of damages because the plaintiff's evidence primarily centered on the employment discrimination itself rather than instances of intentional infliction of emotional distress which may have accompanied that discrimination. The Court noted that the plaintiff's evidence focused "less on the alleged campaign of harassment, public ridicule, and verbal abuse, than on the discriminatory refusal to dispatch him to any but the briefest and least desirable jobs; and no appropriate instruction distinguishing the two categories of evidence was given to the jury." 430 U.S. at 306, 97 S.Ct. at 1066, 51 L.Ed.2d at 354. The Court explained:

> Union discrimination in employment opportunities cannot itself form the underlying "outrageous" conduct on which the state tort action is based; to hold otherwise would undermine the preemption principle. Nor can threats of such discrimination suffice to sustain state-court jurisdiction. It may well be that the threat, or actuality, of employment discrimination will cause a union member considerable emotional distress and anxiety. But something more is required before concurrent state-court jurisdiction can be permitted. Simply stated, it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself.

*Id.* at 306, 97 S.Ct. at 1066, 51 L.Ed.2d at 353.

It may be that the evidence presented at trial of Brown's intentional infliction claim will belie the pleaded allegations and place this case within the ambit of preempted conduct over which the NLRB has exclusive jurisdiction. As pleaded, however, Brown's claim falls within the local-interest exception carved out by *Farmer* and the cases it cites. The district court erred in dismissing Brown's third cause of action.

■ **B.** *Intentional Interference With Contractual Relations and Employment Opportunities.* Brown's second cause of action, also based on the alleged improper conduct of Garman and Baker in operating the hiring hall, asserted that defendants' actions were "malicious and outrageous" and had "intentionally interfered" with his contractual relationship with his union and his prospective opportunities for employment. The district court correctly dismissed this separate cause of action as

being within the reach of the preemption doctrine.

Brown's intentional interference claim is very similar to a damage claim asserted by an employee against his union in *Local 100, United Association of Journeymen v. Borden*, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638 (1963). The Court there held that Borden's damage claim, based on alleged arbitrary and discriminatory operation of a hiring hall, was preempted by sections 7 and 8 of the National Labor Relations Act. The Court pointed out that if Borden had filed unfair labor practice charges, the NLRB might have concluded either that the refusal to refer him to a job was a lawful hiring hall practice, or, conversely, that the refusal to refer him constituted an unfair labor practice. The Court's explanation points out how pervasively federal labor statutes regulate union hiring hall practices, the source of Brown's claim against Baker for intentional interference:

> The facts as alleged in the complaint, and as found by the jury, are that the Dallas union business agent, with the ultimate approval of the local union itself, refused to refer the respondent to a particular job for which he had been sought, and that this refusal resulted in an inability to obtain the employment. Notwithstanding the state court's contrary view, if it is assumed that the refusal *and the resulting inability to obtain employment* were in some way based on respondent's actual or believed failure to comply with internal union rules, it is certainly "arguable" that the union's conduct violated § 8(b)(1)(A), by restraining or coercing Borden in the exercise of his protected right to refrain from observing those rules, and § 8(b)(2), by causing an employer to discriminate against Borden in violation of § 8(a)(3). See, e.g., *Radio Officers' Union, etc. v. National Labor Relations Board*, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455; Local 568, Hotel Employees, 141 N.L.R.B. No. 29; International Union of Operating Engineers, Local 524 A–B, 141 N.L.R.B. No. 57. As established in the Radio Officers case,

the "membership" referred to in § 8(a)(3) and thus incorporated in § 8(b)(2) is broad enough to embrace participation in union activities and maintenance of good standing as well as mere adhesion to a labor organization. 347 U.S., at 39–42, 74 S.Ct., at 335–336.

> . . . .

> It may also be reasonably contended that after inquiry into the facts, the Board might have found that the union conduct in question was not an unfair labor practice but rather was protected concerted activity within the meaning of § 7. This Court has held that hiring-hall practices *do not necessarily* violate the provisions of federal law, *Local 357, International Brotherhood of Teamsters etc. v. National Labor Relations Board*, 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11, and the Board's appraisal of the conflicting testimony might have led it to conclude that the refusal to refer was due only to the respondent's efforts to circumvent a lawful hiring-hall arrangement rather than to *his* engaging in protected activities. The problems inherent in the operation of union hiring halls are difficult and complex, see Rothman, The Development and Current Status of the Law Pertaining to Hiring Hall Arrangements, 48 Va.L.Rev. 871, and point up the importance of limiting initial competence to adjudicate such matters to a single expert federal agency.

373 U.S. at 694–696, 83 S.Ct. at 1426, 10 L.Ed.2d at 641–42 (emphasis in original).

Just as Borden's exclusive means of redress for hiring hall violations was the filing and pursuing of an unfair labor practice charge with the NLRB, so is Brown's exclusive remedy for interference with employment opportunities the filing of such a charge. Unlike the emotional distress claim, the interference with employment cause of action would require the district court to resolve the precise issues concerning permissible operation of a hiring hall that the NLRB would consider if an unfair labor practice charge had been filed. Both the unfair labor practice charge and the

state action would focus on the discrimination that Brown alleged he suffered at the hands of union officials. If the state court were to decide this claim of interference with contractual relations, the State decision could undermine the very purpose of the preemption doctrine, protection of the federal scheme for regulating conduct of employers, employees, and unions. *See Amalgamated Association of Motor Coach Employees v. Lockridge,* 403 U.S. at 286, 91 S.Ct. at 1918, 29 L.Ed.2d at 482–83.

Brown seeks refuge in language of the United States Supreme Court in the recent case of *Belknap, Inc. v. Hale,* 463 U.S. 591, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983), but that case is inapposite. In *Belknap,* nonunion replacement employees sued their employer for misrepresentations and breach of promise, contending they had been assured they would not be dismissed when a strike ended. The Court held that "the misrepresentation action would not interfere with the Board's determination of matters within its jurisdiction and that such an action is of no more than peripheral concern to the Board and the federal law." *Id.* at ——, 103 S.Ct. at 3183, 77 L.Ed.2d at 814. It then explained that the state had a substantial interest in protecting its citizens from misrepresentations that have caused them grievous harm; the Court concluded that "the interests of the Board and the NLRA, on the one hand, and the interest of the state in providing a remedy to its citizens for breach of contract, on the other, are 'discrete' concerns." *Id.* at ——, 103 S.Ct. at 3184, 77 L.Ed.2d at 815.

*Belknap* is distinguishable because its facts are so different from those here. The federal concern there was peripheral only—whether the strike which precipitated the hiring of those employees constituted an unfair labor practice. Here, in contrast, both the NLRB and the state court would necessarily address the same question—did the operation of the hiring hall by Baker and Garman violate Brown's rights. Accordingly, we hold that the district court did not err in finding that it lacked jurisdiction over Brown's claim for intentional interference with contractual relations and employment opportunities.

### III. *The Section 301 Defense.*

As a separate ground for upholding the district court's ruling, Baker contends that he is entitled to the protection provided to individual union members by section 301 of the Labor-Management Relations Act. 29 U.S.C. § 185(b). That federal statute provides that lawsuits may be brought by or against labor organizations to enforce collective bargaining agreements, and further provides:

> Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

Baker contends that Brown's claims are like breach of contract actions which the United States Supreme Court has held cannot be permitted against individual union members who are insulated from suit by the quoted statutory language. *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 249, 82 S.Ct. 1318, 1325, 8 L.Ed.2d 462, 469–70 (1962).

Section 301 provides Baker no defense to this lawsuit because Brown's claims are based entirely on the common law of Iowa whereas section 301 is the source of a remedy under federal substantive law. *See Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 918, 1 L.Ed.2d 972, 980–81 (1957); *Local 1426, International Association of Machinists v. Wilson Trailer Co.,* 289 N.W.2d 608, 610 (Iowa 1980). Section 301 is not a federal labor statute which preempts state courts of jurisdiction; indeed, state and federal courts have concurrent jurisdiction in fashioning the substantive federal law governing enforcement of collective bargaining agreements. *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 507–08, 82 S.Ct. 519, 522–23, 7 L.Ed.2d 483, 486–87 (1962). Our court has previously explained that section 301 "carves out an

exception to the preemption rule for contracts between an employer and a labor organization or between two labor organizations." *Hollander v. Peck,* 261 N.W.2d at 509; *see Dugdale Construction Co. v. Operative Plasterers & Cement Masons International Association, Local 538,* 257 Iowa at 1002–03, 135 N.W.2d at 660 (1965). The district court correctly denied Baker's contention that section 301(b) precluded Brown from bringing suit against him, because Brown's causes of action are in no way dependent upon that federal statute.

In conclusion, the district court erred in dismissing Brown's second cause of action, his claim alleging intentional infliction of emotional distress. The court, however, correctly relied upon the *Garman* preemption doctrine in dismissing Brown's third cause of action, the claim of intentional interference with contractual relations and employment opportunities. Because preemption deprives the district court of the power to decide that claim, the district court cannot hear Brown's third cause of action against either Garman or Baker even though Garman did not raise the preemption question.

Costs shall be assessed equally to Brown and Baker.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.